Thomas W. **COLLINS**, Barbara Collins, Daniel J. Collins, Edward M. Collins, John R. Wade, Bernard J. Miraglia, and Lake States Commodities, Inc., Movants,

v.

**COMMODITY FUTURES TRADING COMMISSION, Respondent.**

Nos. 90 C 1484 to 90 C 1488, 90 C 1544 to 90 C 1546 and 90 C 1549 to 90 C 1555.

United States District Court, N.D. Illinois, E.D.

May 11, 1990.

As Amended May 17, 1990.

James B. Koch, Goldstein & Koch, Ltd., Chicago, Ill., for plaintiff.

Judith S. Goodie, Dennis M. Robb, Commodity Futures Trading Com'n, Chicago, Ill., for defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I.  INTRODUCTION

Pursuant to the Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.* ("RFPA"), Thomas W. Collins, Barbara Collins, Daniel J. Collins, Edward M. Collins, John R. Wade, Bernard J. Miraglia, and Lake States Commodities (collectively, "movants") have moved to quash four subpoenas issued by the Commodity Futures Trading Commission (the "CFTC").  The CFTC issued these subpoenas in connection with an investigation in which it seeks to determine whether Lake States Commodities, Inc., its president, Thomas W. Collins, or its secretary, Edward M. Collins, accepted funds from investors for purposes of

trading commodity futures without registering with the CFTC and/or issued a false commodity futures trading account statement to a third party. The subpoenas were served not upon movants themselves, but upon three banks at which movants maintain accounts. Movants challenge the subpoenas as customers of the banks. Pending before the Court are fifteen motions filed by movants individually to quash the four subpoenas.[1] The motions have been consolidated before this Court for resolution. For the reasons set forth below, the Court denies the motions.

## II. BACKGROUND

### A. *Underlying Facts*

The following factual summary is based largely upon the memorandum which the CFTC has filed in opposition to the motions to quash and which describes the nature of its ongoing investigation. With certain exceptions, the facts asserted in that memorandum are not disputed by movants, and the Court has assumed the uncontested facts to be true for purposes of resolving the pending motions. Where movants have contested particular factual representations made by the CFTC, the Court has noted the dispute and summarized the conflicting representations. However, as explained more fully below, none of the factual disputes between the parties are material to resolution of the motions. Thus, it is unnecessary to obtain further factual submissions from the parties or to conduct an evidentiary hearing before addressing the merits of the motions to quash.

Lake States Commodities, Inc. ("Lake States") is an Illinois corporation first incorporated in 1984 by Thomas W. Collins. The stated purpose of the corporation was to trade commodity futures for its own account. Lake States was dissolved on January 2, 1988 after it failed to file an annual report and pay an annual franchise tax. However, it was re-incorporated under the same name and for the same purpose on March 3, 1988. The Annual Report filed with the Illinois Secretary of State on February 21, 1989 lists Thomas W. Collins as the president/director of Lake States and Edward M. Collins as the secretary/director. Daniel J. Collins, James J. Collins, John R. Wade, Bernard J. Miraglia, and Timothy A. Gianos are listed as directors. The report reflects a business address for Lake States of 1873 Hicks Road in Rolling Meadows, Illinois.

In early October, 1989, the CFTC's Division of Enforcement (the "Division") learned from an unidentified source that Lake States and Thomas W. Collins (hereinafter "Collins") might have accepted funds from third party investors for purposes of trading commodity futures without having registered as a futures commission merchant[2] with the CFTC, and might also have issued a false commodity futures trading

---

**1.** The subpoena issued to American National Bank of Arlington Heights ("ANB") for Account No. 102257301, held in the name of Thomas W. and Barbara Collins, is challenged by two movants: Thomas W. Collins (Case No. 90 C 1484) and Barbara Collins (Case No. 90 C 1546). The subpoena issued to ANB for Account No. 3300030803, held in the name of Lake States Commodities, is challenged by six movants: Thomas W. Collins (Case No. 90 C 1487), Lake States Commodities, Inc. (Case No. 90 C 1488), John R. Wade (Case No. 90 C 1545), Bernard J. Miraglia (Case No. 90 C 1550), Daniel J. Collins (Case No. 90 C 1553), and Edward M. Collins (Case No. 90 C 1554). The subpoena issued to the Suburban National Bank of Palatine for Account No. 2502895, held in the name of Lake States Commodities, is challenged by five movants: Lake States Commodities, Inc. (Case No. 90 C 1485), Thomas W. Collins (Case No. 90 C 1544), Bernard J. Miraglia (Case No. 90 C 1551),

Daniel J. Collins (Case No. 90 C 1552), and Edward M. Collins (Case No. 90 C 1555). The subpoena issued to Heritage Bank of Schaumburg for Account No. 66–332503, held in the name of Thomas W. and Barbara Collins, is challenged by two movants: Thomas W. Collins (Case No. 90 C 1486) and Barbara Collins (Case No. 90 C 1549).

**2.** "The words 'futures commission merchant' shall mean and include individuals, associations, partnerships, corporations, and trusts engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market and that, in or in connection with such solicitation or acceptance of orders, accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom." 7 U.S.C. § 2.

account statement to third parties in connection with futures trading. Later in October, an informant provided the Division with a copy of a trading account statement issued by Heinold Commodities, Inc. ("Heinold Commodities") of Chicago, Illinois. The statement was addressed to "Thomas W. Collins/Heinold Mngmt. Inc." at 1873 Hicks Road, Suite A & B, Rolling Meadows, Illinois. The statement reflected various transactions and trade positions for a period of time ending June 30, 1989. Among the transactions listed was a "Lake States Day Trade" which had generated a credit in the amount of $493,406.00. The statement reflected a total account value of $38,892,759.31.

On October 23, 1989, the Division opened an investigation of Collins and Lake States. At some time before October 30, 1989, the Division requested that Geldermann, Inc. ("Geldermann"), a registered futures commission merchant, provide it with copies of account statements and other records for commodity futures trading accounts associated with Collins and Lake States. Certain commodity accounts held by Geldermann had previously been held by Heinold Commodities. Geldermann complied with the Division's request, and produced certain records before October 30, 1989 and others at a later date. From the records produced prior to October 30, 1989, the Division learned that Collins was associated with numerous accounts at Geldermann, in one instance as the sole owner of the account and in other instances as a joint owner with other persons. The records reflected large deposits and withdrawals in these accounts. The account held solely in Collins' name showed more than $3,148,000 in deposits and $3,574,000 in withdrawals during a period from January to September of 1989, for example. Certain of the deposits to that account were made in the form of cashier's checks issued by the American National Bank of Arlington Heights ("ANB"). Checks issued by the Collins account were in many instances deposited by Collins into Account No. 102257301 at

ANB. Other checks issued by the account were endorsed over to various individuals.

From additional records which Geldermann produced after October 30, 1989, the Division determined that other deposits into the Collins trading account were made in the form of cashier's checks issued both by ANB and Palatine National Bank, which later became the Suburban National Bank of Palatine ("Palatine Bank"). Additional deposits into that account were made by checks which bore the names of "Thomas W. and Barbara Collins" and were drawn on Account No. 102257301 at ANB. Still other funds deposited into the trading account originated from Account No. 66–332503 at Heritage Bank of Schaumburg ("Heritage Bank"). Certain funds withdrawn from the trading account were deposited into the same Heritage Bank account.

On October 24 and 27, 1989, Bryan L. Cannon ("Cannon"), who works for the Division as a Supervisory Futures Trading Investigator, spoke with an unnamed individual regarding a $50,000 commodity futures investment he had made with Lake States. The investor provided Cannon with a variety of information about his trading account, and indicated that the names of Lake States and Heinold appeared on the monthly account statements that he received.

There is apparently some dispute as to the manner in which Cannon handled his interview of this investor and/or other acquaintances of Collins. In the sworn statement Collins has submitted in support of his motions to quash the CFTC subpoenas [3], Collins asserts that friends of his who received telephone inquiries from Cannon were told that "it is not in your best interests [to] tell Tom Collins of this call." (Collins Aff. ¶ 11.) In his own affidavit, Cannon acknowledges that he informed the investor with whom he spoke that all CFTC investigations are confidential and asked the individual not to discuss his conversations with Cannon with anyone except his

---

**3.** Collins' affidavit sets forth not only his factual recollections, but the majority of his legal arguments in favor of quashing the subpoenas at issue in this case. His affidavit has been adopted by other movants.

own attorney. (Cannon Aff. ¶ 11.) However, Cannon denies using the term "best interest," and asserts that he routinely explains to people he interviews that CFTC investigations are treated in a confidential manner in order to protect the privacy of both the persons who are interviewed and the subjects of investigations. (*Id.*)

On the afternoon of October 30, 1989, Cannon, Robert Riley (another Division investigator), and William P. Janulius (a Division trial attorney), visited the offices of Lake States at 1873 Hicks Road in Rolling Meadows. The circumstances of this visit are also disputed to a degree. Cannon and Janulius assert that upon their arrival at Lake States, Cannon introduced each member of the delegation to Collins and explained that they were reviewing the trading activities of Collins and Lake States. (Janulius Aff. ¶¶ 4–5; Cannon Aff. ¶¶ 12, 17.) Cannon, Riley, and Janulius then questioned Collins for a period of approximately 30 to 45 minutes. (Janulius Aff. ¶¶ 9, 10; Cannon Aff. ¶ 12.)[4] This much is agreed upon. (*See* Collins Aff. ¶¶ 3, 5.) However, Collins asserts that at the outset of the interview, when he asked whether he was under investigation, Janulius indicated that their visit was informal and that Collins did not need an attorney present. (*Id.* ¶ 4.) Janulius denies labelling their visit informal, but acknowledges that Collins did ask whether he was being charged with anything by the CFTC. Janulius recalls that either he or Cannon told Collins that the CFTC had not yet made any formal charges, and that the purpose of their visit to Lake States was to determine whether such charges were called for. (Janulius Aff. ¶¶ 6–8.) Cannon concurs. (Cannon Aff. ¶¶ 13–14.) Collins also asserts that during the questioning, he indicated that he would like to have his attorney present, but Janulius repeated that it was unnecessary. (Collins Aff. ¶ 5.) Janulius and Cannon both deny that Collins ever asked whether he could have an attorney present or that Janulius, Cannon, or Riley ever assured him he did not need one. (Janulius Aff. ¶¶ 11, 12; Cannon Aff. ¶¶ 15–16.) Finally, Collins asserts that the questioning ended when he realized that the interview was not informal and he refused to answer any further questions without an attorney present. He claims that at that time, Janulius handed him a subpoena requesting documents and certain information. (Collins Aff. ¶¶ 7, 8.) Janulius and Cannon deny that Collins terminated the questioning, and maintain that the interview ended cordially. They also deny that they handed him a subpoena; they claim that what they gave him was simply a written request for certain records. According to them, Collins indicated that he would have to go over the request with his attorney, and they told him that was acceptable. (Janulius Aff. ¶¶ 14–16; Cannon Aff. ¶¶ 25–26.)[5]

---

**4.** According to Janulius and Cannon, Edward Collins was also present during the interview. (Janulius Aff. ¶ 9; Cannon Aff. ¶ 12.) Cannon recalls Thomas Collins doing most of the talking. (*Id.*) Collins' affidavit is silent as to who, if anyone, was present during the meeting.

**5.** Neither Collins nor Janulius has recounted the substance of the October 30th meeting, although Cannon has done so in his affidavit. Other than what has been recounted above, the substantive discussion which took place at that meeting is immaterial to resolution of the motions to quash. However, as set forth below, among the objections Collins has raised to the subpoenas is that the CFTC is using them simply to gather information in order to build a criminal case against him. Thus, merely for purposes of further background, the Court has summarized Cannon's recounting of the interview here.

Cannon recalls that when he asked Collins for a list of Lake States' commodity futures customers, Collins replied that Lake States had none, and was rather an association of professional traders—mostly members of his family—who traded their personal accounts and simply shared an office. Cannon then asked Collins to identify certain people and to describe their relationship to Lake States, among them the individuals to whom checks from Collins' trading account had been endorsed, as well as persons whom the Division believed had given money to either Collins or Lake States for investment in commodity futures. According to Cannon, Collins indicated that a number of people had loaned him money over the years on loose terms which were not documented. Collins believed that these lenders would have made checks out to him personally, and he would have made repayment out of his personal account; however, he acknowledged the possibility that a check might have been made out to a Lake States account or that a loan might have been repaid from such an account. Collins pur-

On December 1, 1989, the CFTC issued an Order Designating Officers to Issue Subpoenas and to Take Testimony in a Private Investigation which was captioned "In the Matter of Thomas W. Collins, Edward M. Collins and Lake States Commodities, Inc." (the "Order"). This Order authorizes the Division to issue subpoenas and to require the production of documents which have a bearing upon whether Thomas or Edward Collins or Lake States, or anyone associated with them, has engaged in activity proscribed by the Commodity Exchange Act, 7 U.S.C. §§ 1, *et seq.* ("CEA") or the CFTC's regulations. Two provisions of the CEA are particularly pertinent here. Section 6b(2)(B) provides:

> It shall be unlawful ... for any person, in or in connection with ... the making of any [commodity futures contract] ... for or on behalf of any other person ... willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof....

As noted previously, Division staff had certain information which suggested that Collins and Lake States might have issued a false commodity futures trading statement to a third party. The record presently before the Court reveals nothing about the nature of the false statement or to whom it was issued. The Division had also been informed that Collins and Lake States might have been engaged in unauthorized futures trading. Such conduct implicates § 6d(1), which provides:

It shall be unlawful for any person to engage as a futures commission merchant ... in soliciting ... or accepting orders for ... [commodities futures contracts] ... unless ... such person shall have registered ... with the Commission as [a] futures commission merchant.

Under the authority of the Order, Cannon issued subpoenas to Collins and to his business partners and family members on December 22, 1989. According to Janulius, movants' counsel was shown a copy of the Order on December 28, 1989. (Janulius Aff. ¶ 18.)

On February 28, 1990, the Division issued the four subpoenas for bank records to ANB, Palatine Bank, and Heritage Bank. Each subpoena requests records pertaining to a particular account:

1. **ANB Account No. 3300030803**: In an undated letter received by the Division on February 20, 1990, ANB indicated that this is a partnership account held in the name of Lake States Commodities. A Partnership Account agreement for this account dated April 7, 1989 was signed by Thomas W. Collins, Daniel J. Collins, Edward M. Collins, Bernard J. Miraglia, and John R. Wade. It appears that a number of cashier's checks deposited into Collins' trading account with Geldermann may have originated from this partnership account.[6]

2. **Palatine Bank Account No. 2502895**: In a letter dated February 9, 1990, Palatine Bank stated that this account was a partnership account held in the name of Lake States Commodities. A signature card for this account was

---

portedly denied that he had ever issued futures trading account statements to customers, but admitted having sent occasional summaries of his own trading activity and other financial affairs to the people who had loaned him money. Cannon further asserts that when the Collins brothers were shown the Heinold Commodities account statement which the Division had obtained, they explained that it was only one of several prototype statement forms they had drafted over the prior two years, that the data on the statement was fictional, and that copies of such statements had never been made. (Cannon Aff. ¶¶ 18–24.)

6. According to Cannon's affidavit, the Geldermann records indicated that a number of cash-

ier's checks issued by ANB and Palatine Bank for large amounts were deposited into the Collins trading account. Cannon does not identify the account numbers on which these checks were drawn, but he does state that the checks were listed on the subpoenas issued to ANB and Palatine Bank, suggesting that these cashier's checks were drawn upon one of the two partnership accounts at ANB and Palatine for which records were subpoenaed. It does not appear that any of these cashier's checks originated from the joint checking account of Thomas W. and Barbara Collins discussed in ¶ 3, below, given that Cannon's affidavit specifically identifies both that account as well as the deposits to and withdrawals from the account. *See* Cannon Aff. ¶¶ 7–8.

signed by Thomas W. Collins, Edward M. Collins, Daniel J. Collins, and Bernard J. Miraglia. As with the ANB account, it appears that certain cashier's checks deposited into Collins' trading account at Geldermann were drawn upon this partnership account at Palatine Bank. *See* n. 6, *supra*.

3. **ANB Account No. 102257301:** This is a joint checking account held in the names of Thomas W. and Barbara Collins. As previously noted, the Division's review of the Geldermann trading account records indicated that certain withdrawals from the Collins trading account were deposited into this bank account, and likewise certain deposits into the trading account originated in this bank account. (Cannon Aff. ¶¶ 7–8.)

4. **Heritage Bank Account No. 66–332503:** This is another joint checking account held in the names of Thomas W. and Barbara Collins. As with the ANB joint checking account above, the Geldermann records indicated that certain deposits to or withdrawals from the Collins trading account were made from and to this account at Heritage Bank. (Cannon Aff. ¶ 8.)

Each of the four subpoenas was issued in accordance with the terms of the RFPA.

B. *Relevant Provisions of the RPPA*

The RFPA imposes certain limitations and conditions upon the disclosure of bank records to government authorities. Section 3402 imposes a general bar to government access to the financial records of a customer of a financial institution, with certain exceptions. Most importantly for present purposes, disclosure is permitted if it is in response to an administrative subpoena which complies with the requirements set forth in § 3405. 12 U.S.C. § 3402(2). Section 3405 in turn provides:

A Government authority may obtain financial records under section 3402(2) of this title pursuant to an administrative subp[o]ena or summons otherwise authorized by law only if—

(1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;

(2) a copy of the subp[o]ena or summons has been served upon the customer or mailed to his last known address on or before the date on which the subp[o]ena or summons was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry ...[7]; and

(3) ten days have expired from the date of service of the notice or fourteen days have expired from the date of mailing the notice to the customer and within such time period the customer has not filed a sworn statement and motion to quash in an appropriate court, or the customer challenge provisions of section 3410 of this title have been complied with.

The RFPA defines a "customer" as "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the person's name." 12 U.S.C. § 3401(5). The term "person" is defined to "mean[ ] an individual or a partnership of five or fewer individuals." *Id.* § 3401(4).

On February 28, 1990, the same date that the subpoenas were issued to the banks, the Division sent by certified mail notices to each of the individuals associated with the four bank accounts for which records were subpoenaed. There is no dispute that these notices fully complied with the requirements set forth in § 3405.

With regard to the two subpoenas for records of the Lake States accounts at ANB and Palatine Bank, the Division did

---

**7.** The statute recites a form notice which advises the customer that financial records have been subpoenaed from his or her bank, and instructs the customer as to the procedures by which he or she may challenge the disclosure under the RFPA. The notice also warns the customer that

if he or she does not act within either ten days of the date the notice was served upon him or her, or fourteen days from the date the notice was mailed, the subpoenaed documents will be produced.

not send notice to Lake States itself. It justifies this omission on the ground that while the bank records showed Lake States to be a partnership, it is in fact a corporation and therefore not a "customer" entitled to the protection of the RFPA.[8] However, the Division did send notices to each of the individuals named in bank records as members of the Lake States "partnership." The CFTC explains that the Division did so because the banks, thinking Lake States to be a partnership, would not comply with the subpoenas unless notice were given to the purported "partners" in compliance with the RFPA. The record lends some support to this explanation. The CFTC has attached correspondence to its memorandum which appears to indicate that ANB had previously received and complied with certain subpoenas for its Lake States Account, but then declared its production of information "null and void" when it learned that its records showed Lake States to be a partnership and not a corporation. (*See* CFTC Mem.Ex. 5, letter dated February 9, 1990 to Judith S. Goodie from Barbara Meyers.)

## C. *Procedural History*

On March 14 and 15, movants filed 15 motions to quash the subpoenas pursuant to 12 U.S.C. § 3410(a), which provides, in relevant part:

> Within ten days of service or within fourteen days of mailing of a subp[o]ena, summons, or formal written request, a customer may file a motion to quash an administrative summons or judicial subp[o]ena, or an application to enjoin a Government authority from obtaining financial records pursuant to a formal written request, with copies served upon the Government authority.... A motion to quash an administrative summons ... shall be filed in the appropriate United States district court. Such motion or application shall contain an affidavit or sworn statement—
>
> (1) stating that the applicant is a customer of the financial institution from which

financial records pertaining to him have been sought; and

> (2) stating the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this chapter.

Each of the motions was assigned a separate case number and randomly assigned to one of the judges in this District. On March 29, 1990, upon the agreed motion of the parties, this Court entered a finding of relatedness pursuant to Local General Rule 2.31 and recommended that all motions be consolidated before this Court. The Executive Committee acceded to the recommendation and approved the consolidation on March 30, 1990.

Pursuant to a schedule agreed upon by the parties and the Court, the CFTC filed its consolidated response to the motions to quash on May 4, 1990. Movants filed a reply brief on the same date. According to the express terms of 12 U.S.C. § 3410(b), the Court is permitted only seven days from the date the CFTC's response was filed to complete any further proceedings on the motions and render a decision. After carefully reviewing the parties' written submissions, the Court has deemed no further briefing or hearing necessary, and proceeds to address the merits of the motions to quash.

## III. ANALYSIS

### A. *Five Motions are Untimely*

CFTC contends that five of the motions to quash are untimely and should be dismissed. The Court agrees.

As set forth above, § 3410(a) permits a bank customer to file a motion to quash an administrative summons seeking records pertaining to his or her account "[w]ithin ten days of service or within fourteen days

---

**8.** Lake States has raised no objection to the lack of formal notice. In any case, the fact that Lake States itself has timely filed motions to quash

reveals that it was in no way prejudiced by the omission.

of mailing of ... [the] summons." Movants do not dispute that the administrative subpoenas in this case were issued on February 28, 1990, and that copies of the subpoenas and notices which complied with the terms of § 3405(2) were mailed to them by certified mail on the same date. The CFTC has submitted copies of the certified mail return cards for the notices sent to Thomas W. Collins, Barbara Collins, and Bernard J. Miraglia, which indicate that each of these individuals received the mailings on March 3, 1990. Therefore, pursuant to § 3410 these individuals had until either ten days from March 3 (March 13, 1990) or fourteen days from February 28 (March 14, 1990) to file their motions to quash. However, five of their motions were filed beyond this deadline, on March 15, 1990:

| Case Number | Customer/Movant | Account Number for which Records Subpoenaed |
|---|---|---|
| 90 C 1544 | Thomas W. Collins | 2502895 |
| 90 C 1546 | Barbara Collins | 102257301 |
| 90 C 1549 | Barbara Collins | 66–332503 |
| 90 C 1550 | Bernard J. Miraglia | 3300030803 |
| 90 C 1551 | Bernard J. Miraglia | 2502895 |

Movants do not dispute that the notices which they received advised them that they were required to file objections to the subpoenas within the time frame set forth in the RFPA. *See* n. 7, *supra.*

The Supreme Court has had occasion to remark upon the significance of the procedural dictates of § 3410 as follows:

> A customer's ability to challenge a subpoena is cabined by strict procedural requirements. For example, he must assert his claim within a short period of time, § 3410(a), and cannot appeal an adverse determination until the Government has completed its investigation, § 3410(d). Perhaps most importantly, the statute is drafted in a fashion that minimizes the risk that customers' objections to subpoenas will delay or frustrate agency investigations. Thus, a court presented with such a challenge is required to rule upon it within seven days of the Government's response, § 3410(b), and the pertinent statutes of limitations are tolled while the claim is pending, § 3419.

*Securities and Exchange Commission v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 745–46, 104 S.Ct. 2720, 2727, 81 L.Ed.2d 615 (1984). At least one court has found that motions which are not filed within the time limits of § 3410(a) should normally be denied on the basis of untimeliness alone. *Sandsend Financial Consultants, Ltd. v. Federal Home Loan Bank Board,* 878 F.2d 875, 881 n. 6 (5th Cir.1989). In this case, movants have proffered no reason explaining the belated filing of the five motions listed above, nor have they even contested the CFTC's argument that the untimely motions should be dismissed. In view of the strict procedural requirements which demand prompt action not only on the part of the movants, but the Court as well, together with the interest in minimizing delays which would delay ongoing agency investigations, the Court finds that the five motions listed above should be dismissed as untimely.

B. *Records Pertaining To The Lake States Accounts Are Not Within the Protection Of The RFPA*

■ Eleven of the motions to quash are directed to the two subpoenas which seek records pertaining to the partnership accounts at ANB and Palatine Bank. These include the following motions [9]:

---

**9.** These motions include three which the Court has already found to be untimely: Case Nos. 90 C 1544, 90 C 1550, 90 C 1551. Accordingly, the

| Case Number | Customer/Movant | Account Number for which Records Subpoenaed |
|---|---|---|
| 90 C 1485 | Lake States | 2502895 |
| 90 C 1487 | Thomas W. Collins | 3300030803 |
| 90 C 1488 | Lake States | 3300030803 |
| 90 C 1544 | Thomas W. Collins | 2502895 |
| 90 C 1545 | John R. Wade | 3300030803 |
| 90 C 1550 | Bernard J. Miraglia | 3300030803 |
| 90 C 1551 | Bernard J. Miraglia | 2502895 |
| 90 C 1552 | Daniel J. Collins | 2502895 |
| 90 C 1553 | Daniel J. Collins | 3300030803 |
| 90 C 1554 | Edward M. Collins | 3300030803 |
| 90 C 1555 | Edward M. Collins | 2502895 |

Although Account Nos. 2502895 and 3300030803 are listed with the banks as "partnership" accounts under the name of Lake States, the CFTC argues that Lake States is actually a corporation, not a partnership, and therefore it does not qualify as a protected "customer" under the RFPA. Consequently, although the CFTC served movants with notice of the subpoenas on the "partnership" accounts consistent with the provisions of the RFPA, *see* p. 1474–75, *supra*, it now contends that the movants have no cognizable rights under the RFPA vis a vis these two accounts because the bank records of a corporation are not within the scope of the RFPA. The Court finds the argument well taken.

In *United States v. Miller*, 425 U.S. 435, 442–43, 96 S.Ct. 1619, 1623–24, 48 L.Ed.2d 71 (1976), the Supreme Court ruled that a bank customer holds no legitimate expectation of privacy with respect to the information contained in bank records, and that such records are consequently beyond the scope of the Fourth Amendment. The RFPA was enacted in response to the Court's holding in *Miller*. *United States v. A Residence Located at 218 Third Street, New Glarus, Wisconsin*, 805 F.2d 256, 260 (7th Cir.1986); *Hancock v. Marshall*, 86 F.R.D. 209, 210 (D.D.C.1980). By its own terms, the RFPA provides "the sole judicial remedy available to a customer to

oppose disclosure of financial records...." 12 U.S.C. § 3410(e); *Sandsend*, 878 F.2d at 876–77. Only "customers" are protected under the RFPA, and as the terms "customer" and "person" are defined by the statute, only individuals and partnerships of no more than five individuals can qualify as customers. 12 U.S.C. § 3401(4), (5). Thus, corporations have no basis on which to challenge the disclosure of their bank records to government agencies. *Pittsburgh National Bank v. United States*, 771 F.2d 73, 75–76 (3rd Cir.1985); *Spa Flying Service, Inc. v. United States*, 724 F.2d 95, 96 (8th Cir.1984); *United States v. Theron*, 116 F.R.D. 58, 62 (D.Kan.1987). *See also Ridgeley v. Merchants State Bank*, 699 F.Supp. 100, 102 (N.D.Tex.1988) ("[t]he few courts which have interpreted this statute ... have adhered strictly to the explicit, unambiguous definition of customer found in the Act").

Here, both Lake States and the individual members of the purported Lake States "partnership" (Thomas Collins, Daniel Collins, Edward Collins, John Wade[10], and Bernard J. Miraglia) have moved to quash the subpoenas for records concerning the two Lake States accounts. The Court assumes that if Lake States were in fact a partnership, each of these movants would have standing under the RFPA to chal-

following discussion supports an alternate basis for dismissing these motions.

**10.** John R. Wade only challenges the subpoena issued to ANB with respect to Account No. 3300030803. The records of Palatine Bank regarding Account No. 2502895 apparently do not indicate that Wade is associated with that account.

lenge the subpoenas. However, the record reveals that Lake States is not in fact a partnership. Beyond the corporate records that the CFTC has attached to its memorandum, Lake States' own motions identify it as a corporation. Moreover, the sworn statement of Collins, which has been adopted by Daniel Collins, Edward Collins, Bernard Miraglia, and John Wade, argues that the records sought from the banks are identical to those already subpoenaed directly from "Lake States Commodities, *Inc.*" (Collins Aff. ¶ 15) (emphasis supplied). Thus, there is no question that the Lake States "partnerhsip" known to ANB and Palatine Bank is actually Lake States Commodities, Inc., an Illinois corporation. Consequently, Lake States, Collins, Daniel Collins, Edward Collins, Bernard Miraglia, and John Wade have no standing as "customers" under the RFPA to challenge the subpoenas on the Lake States accounts. It may be that ANB and Palatine Bank believed the Lake States accounts to be partnership accounts, but that belief alone is insufficient to confer standing on the putative partnership and its partners to challenge the subpoenas. A contrary ruling would permit corporations and corporate directors to bestow upon themselves privacy rights which neither the Constitution nor the RFPA provide, simply by misinforming banks as to their status. *Cf. Jerry T. O'Brien, supra,* 467 U.S. at 746, 104 S.Ct. at 2727 (In enacting the RFPA, "Congress enacted a set of carefully tailored limitations on the agencies' power, designed 'to strike a balance between customers' right of privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations.' "), *quoting* H.R.Rep. No. 95–1383, p. 33 (1978), U.S.Code Cong. & Admin.News 1978, pp. 9273, 9305. Accordingly, the eleven motions listed above are dismissed due to the movants' lack of standing as "customers".

The Court's dismissal of the motions which were either untimely and/or for which the movants lack standing (*see* n. 9, *supra*) leaves only one motion for the Court to address on the merits: Case No. 90 C 1484, in which movant Thomas W.

Collins challenges the subpoena issued to ANB for records pertaining to Account No. 102257301. However, for purposes of the following discussion, the Court has continued to treat the motions as a group. To this extent, the Court's rulings on the issues below constitute alternate grounds for denying the motions already disposed of.

C. *The Lake States Subpoenas Are Not Invalid On The Ground That The RFPA Is Inapplicable To Lake States*

■ In an attempt to turn the corporate status of Lake States to their own advantage, movants argue that because Lake States is a corporation, the CFTC's efforts to issue the two subpoenas pertaining to the Lake States accounts in compliance with the terms of the RFPA render the subpoenas invalid. This argument is without merit. The CFTC's authority to issue subpoenas rests not upon the RFPA but upon the CEA, 7 U.S.C. § 15. *Cf. Commodity Futures Trading Commission v. Harker,* 615 F.Supp. 420, 424 (D.D.C.1985) ("the [Commodity Exchange] Act grants the Commission the authority to subpoena witnesses and to seek judicial enforcement of such subpoenas"). The RFPA merely imposes certain conditions upon enforcement of subpoenas when the subpoenas require the disclosure of bank records of persons or partnerships which fall within the RFPA's definition of "customers". Thus, the fact that the RFPA does not apply to the bank records of Lake States does not render the subpoenas a nullity; it merely means that the CFTC took procedural steps in issuing the subpoenas which it legally need not have taken. As set forth in the factual summary above, the CFTC asserts that it attempted to comply with the RFPA because the banks believed Lake States was a partnership (and thus a protected "customer" under the RFPA), and consequently would have resisted the subpoenas unless the CFTC complied with the procedural requirements of the RFPA. Rather than attempting compliance with the RFPA, the CFTC could have sought judicial enforcement of the subpoenas if and when the banks refused production of

the requested records. *See* 7 U.S.C. § 15. But the fact that the CFTC chose to give movants the notice required by the RFPA is ultimately immaterial. Movants have cited no prejudice to them which resulted from this tactical decision, nor can the Court discern any. If anything, by virtue of the CFTC's decision to treat the movants as "customers" under the RFPA, movants have enjoyed the benefit of procedural safeguards to which they are not constitutionally or statutorily entitled. *Cf. Securities and Exchange Commission v. Jerry T. O'Brien, Inc., supra,* 467 U.S. at 741–751, 104 S.Ct. at 2725–30 (other than as provided in RFPA, "target" of SEC investigation has no right to notice of subpoena issued to third party under constitution, statute, or judicial law concerning enforcement of subpoenas). Accordingly, the CFTC's provision of notice to movants in compliance with the terms of the RFPA does not require that the subpoenas be quashed.[11]

D. *The Motions To Quash Must Be Denied Because There Is A Demonstrable Reason To Believe That The CFTC Investigation Is Legitimate, That The Records Sought Are Relevant To That Investigation, And That The Requirements Of The RFPA Have Been Met*

The RFPA narrowly constrains the range of decisions which the Court may make with regard to motions to quash. Section 3410(c) provides:

If the court finds that the applicant is not the customer to whom the financial records sought by the Government authority pertain, or that there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a

reasonable belief that the records sought are relevant to that inquiry, it shall deny the motion or application, and, in the case of an administrative summons or court order other than a search warrant, order such process enforced. If the court finds that the applicant is the customer to whom the records sought by the Government authority pertain, and that there is not a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, or that there has not been substantial compliance with the provisions of this chapter, it shall order the process quashed. . . .

Pursuant to the foregoing terms, the decision which the Court must render is clear, for the record amply supports the conclusion that there is a demonstrable reason to believe that the CFTC's investigation of Lake States and Thomas and Edward Collins is legitimate, that the records requested by the subpoenas are relevant to the inquiry, and that the CFTC has complied with the requirements of the RFPA.

CFTC's authority to investigate possible violations of the CEA is unquestioned. *See* 7 U.S.C. §§ 12(a), 15. Here the stated purpose of the investigation is to ascertain whether there have been violations of 7 U.S.C. §§ 6b and 6d(1) and 17 C.F.R. § 1.31, or any other provisions of the CEA or the CFTC's regulations. The information submitted by the CFTC supplies a demonstrable reason to believe that such an inquiry is legitimate.[12] The affidavits of Janulius and Cannon adequately document the Division's receipt of information that Collins and/or Lake States may have engaged in the trading of commodity futures on behalf of third parties without proper

---

11. The most that might be said is that CFTC has waived its argument as to movants' standing under the RFPA by having previously treated movants as "customers" for purposes of the notice provisions of the RFPA. Movants have not made such an argument, however. Moreover, the Court has proceeded to address all of the issues raised by movants on their merits, and thus the Court's resolution of these issues supplies an alternate ground for denial of the motions to quash.

12. Movants appear to argue that CFTC's investigation is improper because it amounts to a quasi-criminal investigation being conducted without a grand jury. (*See* Movants' Reply Mem. at 1.) That argument is addressed below in Section H insofar as it reflects upon the good faith of the investigation.

registration and may also have issued a false trading account statement to a third party. These same affidavits suggest that the follow-up investigation which the Division has performed has yielded information which is generally consistent with this tip. For example, the Division has (1) confirmed that Lake States was incorporated to engage in the trading of commodity futures; (2) received confirmation from an acquaintance of Collins that he had provided funds to Lake States to invest on his behalf in commodities futures; (3) documented a large cash flow into and out of Collins' personal trading account with Geldermann; (4) documented a connection between Collins' personal trading account with Geldermann and the two Lake States accounts at ANB and Palatine Bank; (5) documented a similar connection between Collins' trading account and the two accounts held in the name of Thomas W. and Barbara Collins at ANB and Heritage Bank; and (6) obtained a statement from Heinold Commodities which purports to reflect a substantial trade by Lake States.

Movants apparently concede that the four subpoenas now in issue also satisfy the relevancy prong of the RFPA. As the Fifth Circuit explained in *Sandsend:*

> For purposes of an administrative subpoena, the notion of relevancy is a broad one. *Equal Employment Opportunity Commission v. Elrod,* 674 F.2d 601, 613 (7th Cir.1982). An agency "can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not." [*U.S. v.*] *Morton Salt,* 338 U.S. [632] at 642, 70 S.Ct. [357] at 363, 94 L.Ed. [401] at 410 [1950]. So long as the material " 'touches a matter under investigation,' " an administrative subpoena will survive a challenge that the material is not relevant. *Elrod,* 674 F.2d at 613 (quoting *Motorola v. McLain,* 484 F.2d 1339, 1345 (7th Cir.1973), *cert. denied,* 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 287 (1974).

878 F.2d at 882. The financial records subpoenaed by the CFTC do touch upon the matters which the Division is investigating. Each of the bank accounts for which information has been subpoenaed has a demonstrated connection through withdrawals and deposits to Collins' trading account with Geldermann. Granted, two of these accounts appear to be the personal accounts of Thomas and Barbara Collins. However, in view of the fact that funds deposited to and withdrawn from these bank accounts were commingled in the Collins trading account at Geldermann with funds deposited to and withdrawn from the Lake States accounts, even the ostensibly personal accounts are the legitimate subject of scrutiny. *Cf. Weinberg v. Commodity Futures Trading Commission,* 699 F.Supp. 808, 814–15 (C.D.Cal.1988) (commingling of funds from business and personal accounts subjected both types of accounts to scrutiny), *aff'd without published opinion,* 884 F.2d 1396 (9th Cir. 1989). The records pertaining to all of these accounts may enable the CFTC to map the flow of funds into and out of the Collins trading account and thereby shed further light upon whether Collins, Edward Collins, and/or Lake States are improperly trading commodity futures on behalf of third parties. *Cf. Sandsend,* 878 F.2d at 882 (records concerning bank account of non-target party were relevant as a means to trace possibly illicit transactions).

Finally, to the extent that the RFPA applies to the subpoenas (*see* Section B, *supra* ), there is no dispute that the CFTC has complied with its requirements in all respects. As stated previously, the CFTC provided notice of the subpoenas which complied with the requirements of § 3405 to each individual associated with the four bank accounts for which records were subpoenaed.

■ Although movants contest neither the CFTC's authority to conduct the investigation of Collins and Lake States nor the relevance of the subpoenaed bank records, and cite no defect in the CFTC's attempts to comply with the RFPA, movants nonetheless argue that the subpoenas should be quashed because they seek records identical to those already subpoenaed directly from Lake States (*see* Collins Aff. ¶ 15), and because "[t]here are lesser [sic] intru-

sive alternatives to this request such as requesting that Movant[s] produce commodity related checks." These arguments are evidently grounded in the burden which a government agency normally bears when it seeks judicial enforcement of its subpoena. In that setting:

The agency must show that the investigation is being conducted pursuant to a legitimate purpose, that the information sought is relevant to that purpose, that the agency does not already have the information, and that the administrative prerequisites have been exhausted.

*Commodity Futures Trading Commission v. Harker, supra,* 615 F.Supp. at 424, citing *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964). Although these requirements are similar in certain respects to those set forth in § 3410(c), the *Powell* requirements differ to the extent they permit the district court to consider, as movants would have this Court do, whether the agency already has the information requested in the subpoena, or whether there are other alternatives which might yield that information. Such considerations are not appropriate here. Movants, after all, are not the respondents to the subpoenas in question, and therefore they cannot resort to the principles which govern subpoena enforcement proceedings generally to oppose the subpoenas; their sole judicial remedy lies in the RFPA. *Cf. Jungles v. United States,* 634 F.Supp. 585, 586 (N.D.Ill.1986) (*Powell* requirements applicable only in proceedings to enforce subpoenas, not proceedings on motions to quash); *O'Neal v. United States,* 601 F.Supp. 874, 877 n. 1 (N.D.Ind.1985) (same). And within the framework of the RFPA, only three questions are relevant: (1) Is there a legitimate law enforcement inquiry; (2) are the subpoenaed bank records relevant to the inquiry; and (3) has the government agency complied with the requirements of the RFPA? *Sandsend,* 878 F.2d at 882. All of these questions have been answered in the affirmative here. The Court is therefore required under the RFPA to deny the motions to quash.

Even if it were appropriate for the Court to consider the breadth of the subpoenas and determine whether the CFTC already has the information sought or could obtain it by less burdensome means, movants have not sufficiently articulated a basis upon which to quash or limit the subpoenas. Movants have come forward with nothing to demonstrate that the information and materials demanded in the subpoenas are in fact cumulative of that which the Division has already obtained from Lake States. *Cf. Panaro v. United States Securities and Exchange Commission,* 1987 WL 15951 at 2 (E.D.N.Y. August 5, 1987) ("The customer's statement must provide a '*factual basis* for the conclusion that there is no reason to believe the financial records which are being sought contain information relevant to a legitimate law enforcement purpose.'") (emphasis supplied), *quoting Hancock v. Marshall, supra,* 86 F.R.d. at 211. Similarly, although movants contend that the information which the Division seeks could be obtained through other means, the only concrete alternative they suggest is for them to produce "commodity related checks." (Collins Aff. ¶ 17.) Notably, to the extent the subpoenas request information regarding checks, they identify particular check numbers and thereby limit the intrusive aspect of the subpoenas. At the same time, however, the subpoenas request more from the banks than just checks, and movants suggest no alternative means by such additional information could be obtained. In view of the narrow grounds identified in the RFPA as a basis for quashing a subpoena for bank records, the Court finds movants' conclusory arguments as to the potentially cumulative and expansive reach of the subpoenas to be insufficient to prevent their enforcement.

E. *Movants Have No Constitutional Right To Privacy Vis A Vis The Bank Records*

■ Movants argue that the production and disclosure of the subpoenaed documents would violate their constitutional right to privacy. (*See* Collins Aff. ¶ 11.) That argument is without merit in light of the Supreme Court's decision in *United*

*States v. Miller, supra,* 425 U.S. at 440–43, 96 S.Ct. at 1622–25. (*See* Section B, *supra.*) In that case the Court rejected the argument that a bank customer had a legitimate expectation of privacy with respect to bank records which was cognizable under the Fourth Amendment:

> The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

425 U.S. at 443, 96 S.Ct. at 1624 (citations omitted). Pursuant to the Court's holding in *Miller,* the banks' compliance with the CFTC subpoenas will not infringe upon any constitutional right to privacy enjoyed by the movants.

### F. *Production Of The Subpoenaed Materials Will Not Violate Movants' Fifth Amendment Right Against Self–Incrimination*

██ Movants next argue that their Fifth Amendment right against self-incrimination will be violated if the banks comply with the subpoenas and produce their bank records. Like movants' privacy argument, this contention holds no merit. The subpoenas in question have been served not upon movants, but upon their banks. Accordingly, there is no risk of self-incrimination implicated by the subpoenas. As the Supreme Court explained in *Securities and Exchange Commission v. Jerry T. O'Brien, Inc., supra:*

> It is also settled that a person inculpated by materials sought by a subpoena issued to a third party cannot seek shelter in the Self–Incrimination Clause of the Fifth Amendment. The rationale of this doctrine is that the Constitution proscribes only *compelled* self-incrimination, and, whatever may be the pressures exerted upon the person to whom a subpoe-

na is directed, the subpoena surely does not "compel" anyone else to be a witness against himself.

467 U.S. at 742, 104 S.Ct. at 2725 (citations omitted).

### G. *Collins' Sixth Amendment Right To Counsel Has Not Been Violated*

██ Collins also suggests that the CFTC violated his Sixth Amendment right to the assistance of counsel when Janulius, Cannon, and Riley interviewed him on October 30, 1989 without counsel being present. However, Collins' Sixth Amendment rights are not implicated here. By its own terms, the Sixth Amendment guarantees the right to counsel only in criminal prosecutions. *See A Sealed Case,* 890 F.2d 15, 18 (7th Cir.1989) (parties in civil cases have no right to counsel). Collins concedes that the CFTC's investigation does not qualify as a criminal proceeding, but contends that the potential for criminal charges against him is sufficient to trigger his right to counsel under the Sixth Amendment. That argument is unavailing.

> It is well established that a person is entitled to the service of a lawyer "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417 (1972).

*Quadrini v. Clusen,* 864 F.2d 577, 585 (7th Cir.1989). *See United States v. White,* 879 F.2d 1509, 1513 (7th Cir.1989) (Sixth Amendment rights not implicated where criminal matter had not yet moved from investigative to accusatorial stage), *cert. denied,* — U.S. ——, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990). Here, there are no criminal charges pending against Collins; the CFTC is simply conducting an administrative investigation. The fact that this investigation might one day ripen into criminal charges is insufficient to implicate the right to counsel. Were Collins' argument correct, all administrative investigations which carry the potential for criminal charges at a later date would be trans-

formed into formalized, quasi-criminal proceedings. *Cf. Hannah v. Larche,* 363 U.S. 420, 446, 80 S.Ct. 1502, 1517, 4 L.Ed.2d 1307 (1960) (Reason for typical agency rules limiting right to counsel to adjudicative as opposed to investigative proceedings was obvious: "The Federal Trade Commission could not conduct an efficient investigation if persons being investigated were permitted to convert the investigation into a trial.") [13] Finally, although the Administrative Procedure Act, 5 U.S.C. § 555(b) does provide for the right to counsel, that statutory right is not triggered until a person is compelled to appear and give testimony before an agency of the federal government. *See also* 17 C.F.R. § 11.7(c).

## H. *Movants' Allegations Of Bad Faith Are Insufficient To Merit Quashing The Subpoenas*

Movants also argue that the subpoenas should be quashed because the CFTC is conducting its investigation in bad faith. In movants' view, this bad faith is evidenced in three ways: (1) the CFTC investigators failed to inform him on October 30 that he was the target of their investigation and that he had a right to consult with his attorney; (2) the investigators admonished other witnesses with whom they spoke not to discuss the investigation with Collins and thereby violated his right of association; and (3) "the CFTC is conducting a quasi-criminal investigation without a properly impanelled Grand Jury," and is seeking evidence to contradict the statements Collins made at the October 30th meeting with agents of the Division. Mov-

ants' bad faith argument fails for at least two reasons.

■ First, the Court has already determined that the subpoenas pass muster under § 3410(c), in that the CFTC is conducting a legitimate investigation into Collins and Lake States, the subpoenaed bank records are relevant to that investigation, and the requirements of the RFPA have been honored. Beyond a general assessment of the legitimacy of the government's investigation, the RFPA does not invite further inquiry into the good faith or bad faith demonstrated by the government in the manner of its investigation. *Cf. Securities and Exchange Commission v. Howatt,* 525 F.2d 226, 229 (1st Cir.1975) ("it is not the court's role to intrude into the investigative agency's function").

■ Even if further inquiry into the government's good faith were appropriate, *see United States v. Powell,* 379 U.S. at 58, 85 S.Ct. at 255 ("[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused"), movants have not made a sufficient showing of bad faith in this case to justify quashing the four subpoenas.

A regulatory agency may investigate possible violations of law through its administrative process, provided that its inquiries are for a proper purpose, the information sought is relevant to that purpose, and the statutory procedures are observed. Once the agency has established the existence of a valid civil purpose, the burden shifts to the defendants to come forward with evidence of bad faith.... [T]he burden is on the

---

**13.** Nor can it be said that Collins' Fifth Amendment right against self-incrimination was somehow violated in the October 30th interview, as Collins appears to suggest. Even if the Court were to assume that Collins' version of that meeting is correct, and that the Division representatives told him he did not need an attorney for purposes of the interview, the fact remains that Collins was not taken into custody such that he was entitled to *Miranda* warnings. *See United States v. Gel Spice Co.,* 601 F.Supp. 1214, 1219 (E.D.N.Y.1985). Nor is there any indication that the statements which Collins made at the meeting were obtained through trickery or coercion. *See id. Cf. Kent v. Hardin,* 425 F.2d

1346, 1349 (5th Cir.1970) (in Commodity Exchange Commission investigation, traders interviewed by agents had no right to be informed of the nature of the investigation or the questions asked, nor were they entitled to *Miranda* warnings). While there is some dispute as to whether Collins was assured that the investigation was "informal," Collins acknowledges that he was told at the outset that the CFTC was conducting an inquiry into the business affairs of Lake States. Moreover, according to Collins' version of events, once he told the Division representatives that he would not answer any further questions without consulting with an attorney, the interview ended.

defendants in this case "to disprove the actual existence of a valid ... purpose...."

*Gel Spice,* 601 F.Supp. at 1218 (citations omitted). There is nothing in the record which suggests that this is not an appropriate investigation within the scope of the CFTC's regulatory authority, that the CFTC issued the subpoenas merely to harass Lake States and Collins, or that the government is simply using the offices of the CFTC to disguise what really amounts to a criminal investigation for a prosecution of Collins which has already been planned. *Cf. United States v. LaSalle National Bank,* 437 U.S. 298, 313–14, 98 S.Ct. 2357, 2366, 57 L.Ed.2d 221 (1978); *Gel Spice,* 601 F.Supp. at 1218. Nor does the particular conduct of which movants complain betray an abuse of the CFTC's investigatory powers.

■ Moreover, to the extent further consideration of movants' bad faith argument would require an evidentiary hearing, given the factual disputes as to, for example, what the Division agents told Collins and other witnesses and the government's motive in conducting the investigation, movants have failed to make the "substantial preliminary showing of bad faith" required of them in order to obtain such a hearing. *Id.; see also Securities and Exchange Commission v. Howatt, supra,* 525 F.2d at 229 (in proceeding to enforce S.E.C. subpoena, evidentiary hearing regarding Commission's good faith not required where respondents failed to offer meaningful evidence that government might be exceeding or abusing its investigatory authority); *Spannaus v. Federal Election Commission,* 641 F.Supp. 1520, 1533–34 (S.D.N.Y.1986) (same), *judgment aff'd without published opinion,* 816 F.2d 670 (2nd Cir. 1987). *Cf. United States v. Swiatek,* 819 F.2d 721, 725 (7th Cir.) (in a criminal case, "[a] trial court need only grant an evidentiary hearing on the issue of outrageous government conduct when the defendant has presented specific facts that are sufficient to raise a significant doubt about the propriety of the government's actions"), *cert. denied,* 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987). Even if the Court assumes that the aversions Collins has made in his affidavit are accurate, movants have not demonstrated that the government might be conducting its investigation in bad faith. As set forth above, the alleged failure of the Division representatives to inform Collins of his right to consult counsel does not rise to the level of a violation of his rights under the Fifth and Sixth Amendments. *See* Section G, *supra.* Further, the fact that Collins was not told he was a "target" of the CFTC's investigation was also not improper, particularly when the agents did explain to him the nature of their investigation. (*See* Collins Aff. ¶ 3; Janulius Aff. ¶¶ 4–8; Cannon Aff. ¶¶ 12–17.) *Cf. United States v. Washington,* 431 U.S. 181, 189, 97 S.Ct. 1814, 1820, 52 L.Ed.2d 238 (1977) (rejecting contention that failure to advise grand jury witness that he might be indicted as result of investigation was violation of Fifth Amendment); *United States v. Serlin,* 707 F.2d 953, 956 (7th Cir.1983) ("Simple failure to inform defendant that he was the subject of the investigation, or that the investigation was criminal in nature, does not amount to affirmative deceit unless defendant inquired about the nature of the investigation and the agents' failure to respond was intended to mislead."); *United States v. Okwumabua,* 828 F.2d 950, 953 (2nd Cir.1987) (same); *United States v. Keller,* 730 F.Supp. 151, 165–66 (N.D.Ill.1990) (same). Next, assuming that Cannon told other witnesses with whom he spoke not to disclose their conversations with him to Collins, that was neither a demonstrable violation of his right of association under the First Amendment nor an indication of bad faith. The subject of a government investigation has no constitutional right to notice of the government's attempts to obtain information from third parties. *Cf. Jerry T. O'Brien,* 467 U.S. at 749–50 & n. 24, 104 S.Ct. 2729 & n. 24 (target of S.E.C. investigation not entitled to notice of subpoenas issued to third parties); *Dennis v. United States,* 660 F.Supp. 870, 874 (C.D. Ill.1987) (absent some specific showing of how First Amendment rights were chilled,

respondent's contention that IRS investigation interfered with his rights of expression and association was without merit). Finally, the record does not support the conclusion that the CFTC investigation is merely a sham, and that the government's real intent is to pursue a criminal prosecution of Collins or anyone else. Given the facially valid purpose of the investigation and the ample evidence offered by the CFTC in justification of its inquiry, the mere potential for future criminal prosecution does not call into doubt the good faith of the CFTC. *See United States v. Gel Spice Co.*, 773 F.2d 427, 433 (2nd Cir.1985), *cert. denied*, 474 U.S. 1060, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986); *see also LaSalle National Bank*, 437 U.S. at 314–17, 98 S.Ct. at 2366–68.

## I. CFTC Has Jurisdiction To Subpoenaed The Financial Records of Movants

■ Finally, movants contend that to the extent the CFTC is attempting to determine whether an unregistered commodities pool exists among them, the subpoenas should be quashed because such a determination falls within the province of the Securities and Exchange Commission and beyond the jurisdiction of the CFTC. This argument may be quickly dispatched. The Court has already determined that there is a demonstrable reason to believe that the CFTC is conducting a legitimate inquiry and that the records sought in the subpoenas are relevant to that inquiry. *See* Section D, *supra*. As the CFTC correctly argues, it would be inappropriate for the Court to attempt to predict what range of the movants' activities might be implicated by the documents subpoenaed and to further consider whether some aspect of those activities falls outside of the CFTC's regulatory authority. The CFTC must be given substantial leeway to investigate movants' affairs so that the agency itself may ascertain whether movants have complied with or run afoul of the CEA and CFTC regulations. *Federal Trade Commission v. Swanson*, 560 F.2d 1, 2 (1st Cir.1977); *Se-*

*curities and Exchange Commission v. Howatt, supra*, 525 F.2d at 229–30. *See also Sandsend*, 878 F.2d at 882.

## IV. CONCLUSION

For the reasons set forth above, Case Nos. 90 C 1544, 90 C 1546, 90 C 1549, 90 C 1550, and 90 C 1551 are dismissed as untimely. Case Nos. 90 C 1485, 90 C 1487, 90 C 1488, 90 C 1545, 90 C 1552, 90 C 1553, 90 C 1554, and 90 C 1555 are dismissed due to movants' lack of standing as "customers" under the RFPA. Case Nos. 90 C 1544, 90 C 1550, and 90 C 1551 are dismissed alternatively for this same reason. Thomas W. Collins' motion to quash the subpoena issued to ANB for records pertaining to Account No. 102257301 is denied on its merits and, accordingly, Case No. 90 C 1484 is dismissed. *Cf. Dennis v. United States, supra*, 660 F.Supp. at 875. The same reasons which the Court has identified for denying the motion to quash filed in Case No. 90 C 1484 constitute alternative grounds for denying all other motions to quash and for dismissing those cases.