**Stephen D. SIEGFRIED, Plaintiff,**

v.

**INSPECTOR GENERAL OF THE UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

**No. CV 01–4875.**

United States District Court,
E.D. New York.

Sept. 10, 2001.

---

Stephen D. Siegfried, East Quogue, N.Y., plaintiff pro se.

Alan Vinegrad, United States Attorney, Eastern District of New York, Central Islip, N.Y., by Vincent Lipari, Assistant United States Attorney.

Office of the Inspector General, United States Department of Agriculture, Washington, D.C., by Nooshen Amiri, Assistant Counsel to the Inspector General.

## *ORDER*

SPATT, District Judge.

Presently before the Court is a motion by the Stephen D. Siegfried ("Siegfried" or the "plaintiff") to quash a subpoena *duces tecum* number 6357 issued by the United States Department of Agriculture ("USDA") to Northfork Bank, Mattituck, New York, pursuant to the Inspector General Act of 1978, 5 U.S.C. app. 3, § 6(a)(4), and in accordance with the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. §§ 3401–3422. The Government opposes Siegfried's motion on the grounds that: (1) it is untimely; and (2) the subpoena was properly issued, pursuant to the RFPA, to secure information relevant to a legitimate law enforcement inquiry.

## I. *BACKGROUND*

The following facts are taken from the declaration of Special Agent ("SA") Ellen Quackenbush of the Office of the Inspector General ("OIG"), which was submitted in support of the Government's memorandum of law in opposition to Siegfried's motion to quash the subpoena.

The Rural Development ("RD") division of the USDA administers the Rural Housing Loan Program whereby the USDA provides loans to moderate-income individuals that enable those individuals to buy houses in rural areas. In issuing these loans, RD wire-transfers the funds into the escrow account belonging to the buyer's attorney prior to the closing. On the day of the closing, the attorney issues a check drawn against the escrow account to the seller for the total RD loan amount.

According to the Government, in October 2000, Siegfried represented a client who was purchasing a house through this

program. On October 16, 2000, RD wired the sum of $147,050 to Siegfried's escrow account at the Bank of New York. The closing was to occur the following day but was delayed. RD directed Siegfried to return the funds that had been wired to him, but Siegfried allegedly failed to return the funds. According to the papers submitted by the Government, Siegfried still has not returned the money to RD.

The OIG initiated an investigation into the missing funds and assigned SA Quackenbush to the case. In her declaration, SA Quackenbush states that she learned that four days after RD wired the loan amount to Siegfried's Bank of New York account, Siegfried transferred the sum of $151,653 from his Bank of New York account to an account at Northfork Bank in Mattituck, New York. SA Quackenbush also states that the balance in Siegfried's Bank of New York account was "minimal" before the wire transfer from RD. That evidence led SA Quackenbush to believe that the sum transferred from Siegfried's Bank of New York account to his Northfork Bank account included the entire amount of the loan transferred from RD.

On June 25, 2001, in furtherance of the investigation into Siegfried's involvement in the alleged violations of the Rural Housing Loan Program, Paula F. Hayes, for Deputy Inspector General Joyce N. Fleischman, USDA, issued an OIG administrative subpoena *duces tecum* numbered 6357. The subpoena was issued to Northfork Bank in Mattituck, New York and seeks Siegfried's financial records. On June 28, 2001, SA Quackenbush served Siegfried, via First Class U.S. Mail, with a copy of the subpoena, along with the customer notice and challenge forms and instructions required by the RFPA. On July 6, 2001, SA Quackenbush served a copy of OIG subpoena 6357, via hand delivery, on Northfork Bank in New York, New York.

On July 20, 2001, Siegfried filed a notice of motion for an order pursuant to the customer challenge provisions of the RFPA. Siegfried claims that the financial records sought by the OIG are not relevant to the legitimate law enforcement inquiry stated in the Customer Notice that was sent to him, because (1) the nature of the alleged violation of the Rural Housing Loan Program is not set forth with the required specificity; and (2) the financial records sought pertain to an escrow account containing funds belonging to people other than Siegfried, and disclosure of those records would violated those individuals' rights pursuant to the RFPA. The Rural Development division of the USDA administers the Rural Housing Loan Program.

## II. *DISCUSSION*

The RFPA controls Government access to bank records of individuals. *See* 12 U.S.C. §§ 3401–3422. A customer who wishes to challenge a subpoena *duces tecum* must do so within the time frame set forth in the RFPA. *See* 12 U.S.C. § 3410(a). The statute provides, in relevant part:

> Within ten days of services or within fourteen days of mailing of a subpoena, summons, or formal written request, a customer may file a motion to quash an administrative summons or judicial subpoena, or an application to enjoin a Government authority from obtaining financial records pursuant to a formal written request, with copies served upon the Government authority.

12 U.S.C. § 3401(a).

The few courts that have interpreted the procedural aspects of the RFPA have done

so narrowly. The Supreme Court has found that "[a] customer's ability to challenge a subpoena is cabined by strict procedural requirements." *Securities and Exchange Comm'n v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 746, 104 S.Ct. 2720, 2726, 81 L.Ed.2d 615 (1984). The Court also that the objections portion of the statute was drafted in such a way as to minimize any delay in the agency's investigation. *See id.* To this end, the Court noted that a customer wishing to challenge a subpoena "must assert his claim within a short period of time." *Id.* A district court, citing *Jerry T. Obrien,* has held that "[I]f a motion to quash is not timely filed … a district court does not have subject matter jurisdiction to hear the challenge." *Mackey v. United States Securities and Exchange Commission,* 1997 WL 114801 *1 (D.Conn.1997); *see Friedman v. Inspector General, U.S. Dept. of State,* 1992 WL 321510, *1 (D.D.C.1992) (holding that "untimeliness is sufficient grounds for denying a motion to quash").

■ Applying these standards to the case at hand, the Court finds that Siegfried's customer complaint—in the form of a motion to quash the subpoena—is untimely. SA Quackenbush served Siegfried by First Class U.S. mail on June 28, 2001, with a copy of the subpoena, forms and instructions on how and when to file a challenge, as required by 12 U.S.C. § 3405(2). Those instructions specifically informed Siegfried that if he failed to file a customer complaint within 14 days of the subpoena was mailed to him, the records and information sought by the OIG would be disclosed. Siegfried did not file his customer complaint—the motion to quash the subpoena—until July 20, 2001, which

was 10 days after the 14–day deadline expired. *See* 12 U.S.C. § 3410(a).

■ Notably, Siegfried has proffered no reason explaining the belated filing of his motion. This Court must apply the procedural requirements of the RFPA strictly, *Jerry T. O'Brien, Inc.,* 467 U.S. at 746, 104 S.Ct. at 2726, and, in doing so, finds that Siegfried's motion to quash the subpoena must be dismissed as an untimely customer challenge. *See* 12 U.S.C. § 3410(a); *Mackey,* 1997 WL 114801 at *1 (dismissing motion challenging subpoena because it was filed sixteen days after the notice of the subpoena was mailed); *Friedman,* 1992 WL 321510 at *1 (emphasizing time restrictions of the act and dismissing untimely motion challenging subpoena); *Collins v. Commodity Futures Trading Comm'n,* 737 F.Supp. 1467, 1476 (N.D.Ill. 1990) (dismissing five motions as untimely, in light of "the strict procedural requirements which demand prompt action").

In light of the foregoing, it is hereby

**ORDERED** that the plaintiff's motion to quash the subpoena is **DENIED;** and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**