**Neal M. DOUGLAS, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. M8–85 (LBS).**

**No. C–03–4518.**

United States District Court,
S.D. New York.

Jan. 25, 2006.

---

Hector Gonzalez, Charles Hurley, Daniel Dumezich, Mayer, Brown, Rowe & Maw LLP, New York, NY, for Movants.

David S. Jones, W. Carl Hankla, Joseph A. Sergi, U.S. Department of Justice, Washington, D.C., for Defendant.

### *OPINION*

SAND, District Judge.

Before the Court is a motion by third-party petitioners ("movants") to quash subpoenas issued by the United States in the underlying action. The movants are eleven individuals whose financial records have been subpoenaed from Deutsche Bank.[1] The movants assert that the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3401–3422 (2005), prohibits these subpoenas because there is no reason to believe the information sought is relevant to a legitimate law enforcement inquiry. *See* 12 U.S.C. § 3407(1) (Government may obtain financial records via judicial subpoena only if there is "reason to believe that the records sought are relevant to a legitimate law enforcement inquiry"). Because there is reason to believe the information sought is relevant to a legitimate law enforcement inquiry, the motion is denied. Although the motion to quash was untimely, we address the motion on the merits as the Government did not urge untimeliness as a ground for denial of the motion.

### THE ACT

With respect to a judicial subpoena, the RFPA bars the Government from obtaining from a financial institution the financial records of the institution's customers unless the customer has authorized the disclosure or the judicial subpoena meets the requirements of § 3407. 12 U.S.C. § 3402(4). Section 3407 of the Act states:

A Government authority may obtain financial records under [§ 3402] pursuant to judicial subpoena [sic] only if—

(1) such subpena [sic] is authorized by law and there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;

(2) a copy of the subpoena [sic] has been served upon the customer or mailed to his last known address on or before the date on which the subpoena [sic] was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry . . . .

12 U.S.C. § 3407.

There is no challenge to the notice provisions. Section 3410 of the Act specifically discusses customer challenges to subpoenas. A court's decision on a customer challenge hinges on the demonstration of the subpoena's relevance. *See* 12 U.S.C. § 3410(c) (stating that if court finds no "demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, or that there has not been substantial compliance with the provisions of this title, it shall order the process quashed"). Thus, the Court must determine that the inquiry is legitimate and that there is a reasonable belief that the records sought are relevant to that inquiry.

### SUBJECT–MATTER JURISDICTION

Section 3410 outlines the procedure for challenging a subpoena. Section 3410(a) states that "[w]ithin ten days of service or within fourteen days of mailing of a subpena [sic], summons, or formal written request, a customer may file a motion to quash an administrative summons or judicial subpena [sic]." In this case, the subpoena was issued on October 14, 2005.

---

1. The individual movants are Brion B. Applegate, Edouard Aslanian, Dr. Ray Irani, Tom Jermoluk, Boris Putanec, Timothy Mott, San-jay Subhedar, Dr. Thomas Roskos, Thomas M. Roskos Jr., Israel Ury, and Val E. Vaden.

Movants filed their motion to quash on November 7, 2005, which was not within ten days of service or fourteen days of mailing of the subpoena. The Government did not note this lapse and thus a possible objection based on movants' delay was waived.

Subject-matter jurisdiction is not waivable, however, and the Court is obligated to examine whether the failure to comply with the schedule included in § 3410(a) deprives the Court of subject-matter jurisdiction. At least one court in this Circuit has so held. *See Mackey v. SEC*, No. 96–407, 1997 WL 114801, *1, 1997 U.S. Dist. LEXIS 24000, at *2 (D.Conn. Feb. 21, 1997) ("If a motion to quash is not timely filed pursuant to this statute, a district court does not have subject matter jurisdiction to hear the challenge."); *see also Swann v. Sec'y, U.S. Dep't of Housing & Urban Dev.*, Misc. No. 05–492, 2006 WL 148738, *1, 2006 U.S. Dist. LEXIS 1553, at *2 (D.D.C. Jan. 19, 2006) ("As a threshold matter, this court does not have subject matter jurisdiction because Swann's motion is untimely."); *Turner v. United States*, 881 F.Supp. 449, 451 (D.Haw.1995) ("Petitioners failed to file their motion to quash the IRS summonses within the allotted time frame .... Because timely filing is a prerequisite to this Court's jurisdiction over this matter ... the Court hereby dismisses the petition to quash for lack of subject matter jurisdiction.").

The untimeliness of a motion to quash is deemed by these decisions to strip the court of subject-matter jurisdiction. Other courts, however, have noted that untimeliness is a sufficient ground for denying a motion to quash, but have not gone so far as to state that untimeliness necessarily requires dismissal for lack of subject-matter jurisdiction or for any other reason. *See Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 881 n. 6 (5th Cir.1989) ("Sandsend's time

to respond expired on July 5; Sandsend filed its motion on July 8. Although the untimely nature of the motion would, in most cases, provide an independent ground for denying the motion, the FHLBB waived the issue by neglecting to raise [it] in its motion for reconsideration."); *Friedman v. Inspector Gen. of the U.S. Dep't of State*, No. 92–2312, 1992 WL 321510, *1, 1992 U.S. Dist. LEXIS 16307, at *2 (D.D.C. Oct. 21, 1992) ("[T]he Court finds that untimeliness is sufficient grounds for denying a motion to quash."); *Giorgi v. McLaughlin*, Misc. No.1986, 1988 WL 9252, *1, 1988 U.S. Dist. LEXIS 1057, at *4 (N.D.N.Y. Jan. 23, 1988) ("Petitioner has failed to comply with the requirements of the Act. The legislative history as well as the language of the Act itself, particularly Act section 3410(e), indicate that this lack of compliance is sufficient basis for the Court to deny petitioner's motion."). Often courts that dismiss untimely motions to quash note that no reason for delay has been provided, a fact which would be irrelevant if the delay deprived the courts of subject-matter jurisdiction. *See Siegfried v. Inspector Gen. of the U.S. Dep't of Agric.*, 163 F.Supp.2d 170, 173 (E.D.N.Y. 2001) (motion was late and no explanation was provided); *Collins v. Commodity Futures Trading Comm'n*, 737 F.Supp. 1467, 1477 (N.D.Ill.1990) ("In this case, movants have proffered no reason explaining the belated filing of the five motions listed above, nor have they even contested the CFTC's argument that the untimely motions should be dismissed.").

 The Supreme Court recently clarified the distinction between a "rule governing subject-matter jurisdiction and an inflexible claim-processing rule." *Kontrick v. Ryan*, 540 U.S. 443, 456, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). "Characteristically, a court's subject-matter jurisdiction cannot be expanded to account for the

parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Id.* The Supreme Court noted in dicta in *SEC v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984), that the most salient feature of the RFPA is the "narrow scope of the entitlements it creates." *Id.* at 745, 104 S.Ct. 2720. "A customer's ability to challenge a subpoena is cabined by strict procedural requirements. For example, he must assert his claim within a short period of time .... Perhaps most importantly, the statute is drafted in a fashion that minimizes the risk that customers' objections to subpoenas will delay or frustrate agency investigations." *Id.* These "strict procedural requirements," however, do not foreclose the ability of the Government agency to consent to a delay or forfeit a potential objection. Just as the failure to comply with the time requirements of Rules 33 and 45 of the Federal Rules of Criminal Procedure does not deprive courts of subject-matter jurisdiction, the lack of compliance with the time constraints listed in § 3410(a) does not deprive the Court of subject-matter jurisdiction over the case.[2] *See Eberhart v. United States,* —— U.S. ——, 126 S.Ct. 403, 405, 163 L.Ed.2d 14 (2005) ("We break no new ground in firmly classifying Rules 33 and 45 as claim-processing rules, despite the confusion generated by the 'less than meticulous' uses of the term 'jurisdictional' in our earlier cases.") (*quoting Kontrick,* 540 U.S. at 454, 124 S.Ct. 906). *Cf.* Fed.R.Civ.P. 82

("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts."). We proceed to discuss the merits of the motion.

## LEGITIMATE LAW ENFORCEMENT INQUIRY

The Government is the Defendant in the underlying case. The Government's subpoenas declare that movants' records are sought "for the following purpose: to defend its interests in the instant refund case." Section 3407 of the RFPA permits a "Government authority" to subpoena financial records if there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry. Section 3401(8) defines "law enforcement inquiry" as "a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto." 12 U.S.C. § 3401(8). Movants have not challenged the Government's claim that the defense falls into the category of "law enforcement inquir[ies]."

## RELEVANCE

In the underlying action, Plaintiffs Neal and Christine Douglas challenge the disallowance by the Government of claimed income tax benefits related to their Custom Adjustable Rate Debt Structure ("CARDS") transaction. The parties dispute whether Plaintiffs' claimed tax losses achieved through the CARDS transaction possess economic substance, as an "activity will not provide the basis for deductions if

---

**2.** Section 3410 also contains a provision regarding how quickly a court should render a decision on a motion to quash. *See* 12 U.S.C. § 3410(b) (motion to be "decided within seven calendar days of the filing of the Government's response"). The Court deems that requirement as having been waived when the Government consented to the movants' request that the date for oral argument be postponed. The Government filed its response on December 5, 2005. Movants had obtained the consent of the Government for a notice of motion filed on December 2, 2005 which moved the date for oral argument from December 13, 2005 to January 10, 2006.

it lacks economic substance." *Ferguson v. Comm'r*, 29 F.3d 98, 101 (2d Cir.1994). *See also Jacobson v. Comm'r*, 915 F.2d 832, 837 (2d Cir.1990) ("A sham transaction analysis requires a determination 'whether the transaction has any practicable economic effects other than the creation of income tax losses.'") (*quoting Rose v. Comm'r*, 868 F.2d 851, 853 (6th Cir.1989)). The Government has subpoenaed records of individual investors who utilized the CARDS investment vehicle to obtain tax savings of their own. These investors' identities were obtained by the Government pursuant to an earlier subpoena of Deutsche Bank. (Def.'s Br. 2, n. 1.) The Government claims to have a reasonable belief that the evidence regarding movants' CARDS transactions is relevant to its claim that the tax losses obtained by the Douglases through the CARDS transaction are not allowable. The movants claim there is no reason to believe their records are relevant to the Douglas case.

■ The statutory language does not demand that the subpoenaed documents be demonstrably relevant. The statute instead states that there must be a "reasonable belief that the records sought are relevant to [the law enforcement] inquiry." 12 U.S.C. § 3410(c). *See In re U.S. SEC Private Investigation.*, Misc. No. M8–85, 1990 WL 119321, *2, 1990 U.S. Dist. LEXIS 10460, at *5 (S.D.N.Y. Aug. 10, 1990) ("[E]ven if plaintiff may be read to have met his statutory burden, he misreads the burden the statute imposes on the SEC. The statute does not require the agency to show that the records are relevant, but rather that there is a reasonable belief that the records sought are relevant.") (quotation omitted). It is not necessary to delve into what space exists, if any, between a showing that documents are "relevant" and a showing that there exists a "reason to believe" that the documents are

relevant. As discussed below, the records at issue are properly the subject of the subpoena under either standard.

## DISCUSSION

■ The Government argues that the movants' records will assist the Government in determining whether Plaintiffs' transactions lack objective economic substance, and that the information is relevant "pattern evidence" that will help demonstrate the invalidity of the disputed CARDS transactions. The "pattern evidence" argument also encompasses the additional argument made by the Government that tax cases are often tried by showing the separate steps of a scheme, and that the pattern of identical or similar steps by movants will demonstrate an impermissible pattern by the Plaintiffs. The fact that the IRS has already issued a notice concluding that CARDS transactions do not result in allowable deductions (Def.'s Br. 4)[3] does not defeat the Government's claim that the movants' records are needed to demonstrate that in this case the CARDS transactions by the Douglases caused unallowable losses.

There is reason to believe the financial records of the movants are relevant to the Government's investigation of a pattern of improper financial activity. The movants have employed the same financial device utilized by the Plaintiffs, and the manner of their participation in CARDS transactions is relevant to the steps taken by the Plaintiffs. This is true regardless of whether movants' transactions are at some later date deemed to have resulted in allowable or unallowable losses. *Cf. Jade Trading, LLC v. United States*, 65 Fed.Cl. 188 (Fed.Cl.2005) ("[T]he amount and dates of capital gains and losses recognized by the nonparty taxpayers in 1999–2000 are potentially relevant to the Govern-

---

**3.** The Government cites to I.R.S. Notice 2002–21, 2002–1 C.B. 730.

ment's contention that the activity engaged in by the Ervins and others who participated in this type of transaction, was unlike typical marketplace transactions."). Moreover, the sequence of steps undertaken by movants in undertaking the CARDS transactions relates to Plaintiffs' intentions and their understanding of the disputed transactions.

The Court notes that this ruling does not hold that the records are admissible at trial, only that the RFPA does not bar their release to the Government. As the Government has shown it possesses a reasonable belief that the records are relevant to a legitimate law enforcement inquiry, the motion to quash is denied.

SO ORDERED.