**SANDSEND FINANCIAL
CONSULTANTS, LTD.,**
Plaintiff–Appellee,

v.

**FEDERAL HOME LOAN BANK
BOARD, Defendant–Appellant.**

No. 88–2991.

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1989.

Cassandra N. Jones, Thomas J. Segal, Kenneth A. Cureton, Asst. Director, Office of Enforcement, Fed. Home Loan Bank Bd., Washington, D.C., for defendant-appellant.

Jane Cooper–Hill, Jeanne Sommerfeld, Richie & Greenberg, Houston, Tex., for plaintiff-appellee.

Before GEE, GARZA and JONES, Circuit Judges.

GEE, Circuit Judge:

This case requires us to examine the scope of the Federal Home Loan Bank Board's (FHLBB's) power to issue subpoenas for the records of bank customers. Concluding that the FHLBB acted within its statutory power and that it complied with the statutory requirements for issuing the subpoenas in question, we reverse the judgment of the district court.

## I. BACKGROUND

### A. The Federal Home Loan Bank Board And Its Investigatory Powers

The FHLBB, an independent federal agency, is the "operating head" of the Federal Savings and Loan Insurance Corporation (FSLIC). *See* Home Owner's Loan Act of 1933, 12 U.S.C. Section 1461 et seq. (1982); National Housing Act, 12 U.S.C. Section 1724 (1982). The FSLIC insures the qualifying accounts of certain financial institutions. In addition, the FHLBB (or the FSLIC) examines all FSLIC-insured institutions to determine whether they are operating in a safe and sound manner and in accordance with applicable laws and regulations. *See* 12 U.S.C. Sections 1726(b) and 1730(m)(1). To allow the FHLBB to fulfill its duties, Congress granted it broad investigatory powers. The FHLBB's investigatory authority extends to insured institutions and to "the affairs of all affiliates of such institutions...." Section 1730(m)(1).[1] Along with the authority to investigate, Congress provided the FHLBB the tools to investigate:

> In connection with examinations of insured institutions and affiliates thereof, [the FHLBB] ... shall have the power to administer oaths and affirmations and to examine and to take and preserve testimony under oath *as to any matter in respect of the affairs or ownership of any such institution or affiliate thereof,* and to issue subpoenas and subpoenas duces tecum, and for the enforcement thereof, to apply to the United States district court ...

Section 1730(m)(2) (emphasis added).

The Right to Financial Privacy Act (RFPA) limits the FHLBB's—and all government agencies'—powers to issue subpoenas for the records of bank customers. In *United States v. Miller,* the Supreme Court held that a bank customer had no legitimate expectation of privacy in his bank records. 425 U.S. 435, 442–43, 96 S.Ct. 1619, 1623–24, 48 L.Ed.2d 71 (1976), so that when a federal agency issued a subpoena for customer records from a bank, the customer could not successfully challenge the subpoena on fourth amendment grounds. In response to *Miller,* Congress enacted the RFPA, a limited means by which bank customers can shield their financial records from government scruti-

---

**1.** An affiliate is defined by cross or mutual stock ownership with the insured institution. 12 U.S.C. Section 221a(b).

ny. The RFPA sets out the procedures and grounds for challenging a subpoena and provides the "sole judicial remedy available to a customer to oppose disclosure of financial records pursuant to this chapter." 12 U.S.C. Section 3410(e). An agency may obtain a bank customer's records from the bank only if "(1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry"; (2) the agency serves the customer with a copy of the subpoena and with the statutory notice of his right to challenge the subpoena; and (3) the customer does not challenge the subpoena within ten days of service or 14 days of mailing the subpoena. Section 3405.

To challenge a subpoena, a customer must file a motion to quash that includes an affidavit or sworn statement. In the affidavit the customer must state, *inter alia,* either that the financial records are not relevant to the agency's inquiry—and the reasons supporting his belief—or that the government has not substantially complied with the RFPA. Section 3410(a). If the district court finds that the customer has properly challenged the subpoena, it "*shall* order the Government authority to file a sworn response ..." Section 3410(b) (emphasis added). Upon finding that there is a demonstrable reason to believe that the agency is conducting a legitimate law enforcement inquiry and that the records sought are relevant to that inquiry, the court "*shall* deny the motion" to quash. Section 3410(c) (emphasis added). Bearing in mind the narrowly circumscribed nature of the court's discretion under the RFPA, we turn to the subpoena at issue in this case.

### B. The FHLBB's Subpoena For Sandsend's Financial Records

The FHLBB was conducting an examination of Vision Banc Savings and Loan (Vision Banc). As part of this examination, the FHLBB investigated the use and application of the proceeds of Vision Banc loans.

During the examination, the FHLBB discovered a large loan transaction that piqued its curiosity: Vision Banc had granted four individual loans totalling $20,-400,000 to four companies. The companies had then used the loan proceeds to purchase four contiguous tracts of land from Walton Development Co. (Walton). The proceeds of these real estate transactions, funds that originated at Vision Banc, flew home to some suspicious roosts. For example, Walton gave $2.5 million of the money and a tract of land [2] to Robert Corson (Corson). Corson was the Chairman of the Board and the majority stockholder of Vision Banc. Walton also gave $7 million to Sandsend Financial Consultants, Ltd. (Sandsend). Sandsend deposited the money at West Belt Bank (West Belt) and made several large disbursements from its account.

The FHLBB believes that Sandsend received $7 million for "no apparent reason" and made disbursements of that money within days of receiving it. The FHLBB finds the transactions suspicious for several reasons: it suspects that Sandsend is a participant in a scheme to misuse the proceeds of Vision Banc's loan or to defraud Vision Banc and that the four individual loans actually were one loan that exceeded Vision Banc's lending limits.

Hoping to learn more about the suspect loan transaction, the FHLBB issued a subpoena to West Belt for Sandsend's financial records on June 20, 1988. On July 8, three days *after* its time to challenge the subpoena had expired, Sandsend filed a motion to quash. Sandsend asserts that the FHLBB had twenty days to respond to the motion to quash; the FHLBB asserts that it had sixty days to respond. In any event, the district court quashed the subpoena on June 26—before the FHLBB had filed a responsive pleading and two (or perhaps 42) days before its time to do so expired. The court decided the motion without waiting for the FHLBB's time to respond to expire; without ordering the FHLBB to respond, as the RFPA mandates; without

---

**2.** This tract of land is contiguous to the four tracts that Vision Banc's borrowers purchased with the proceeds of their Vision Banc loans.

holding a hearing; and without rendering an opinion. The FHLBB filed a motion for reconsideration, which the district court denied.[3]

The court took these extraordinary measures without issuing an opinion, leaving us only to speculate on the reasons for its actions. In these circumstances, we cannot divine on which of the many possible grounds the court quashed the subpoena and cannot effectively review its action in doing so. For instance, *either* the scope of the FHLBB's subpoena power *or* the legitimacy of the FHLBB's investigation of Vision Banc *or* the relevance of Sandsend's bank records to the Vision Banc examination *or* the FHLBB's compliance with the RFPA could have been dispositive of the motion to quash. The FHLBB appeals.

## II. THE SCOPE OF THE FHLBB'S INVESTIGATORY AUTHORITY

The parties frame the issues in a confusing manner. Sandsend asserts that the FHLBB's subpoena power does not extend to the records of a party who is not directly associated with the target of an FHLBB examination. As Sandsend is not associated with Vision Banc, the argument runs, the FHLBB cannot issue a subpoena for Sandsend's records. Under Sandsend's theory, whether the FHLBB complied with the RFPA is irrelevant because the FHLBB did not have the authority to issue the subpoena. In contrast, the FHLBB analyzes the case under the RFPA. According to the FHLBB, whether its investigatory authority extends to Sandsend's financial records turns on the RFPA inquiry: whether the FHLBB is conducting a legitimate law enforcement inquiry and whether the Sandsend records are relevant to that inquiry. Neither party hits the nail directly on the head.

■ The inquiry that the FHLBB is authorized to make is not whether *Sandsend* has violated the law, but whether Vision Banc has done so. It is undisputed that the FHLBB's examination of Vision Banc is a legitimate law enforcement inquiry. Sandsend's records may facilitate that inquiry. Properly framed, the threshold issue is whether, pursuant to a legitimate law enforcement inquiry, the FHLBB may subpoena a bank customer's records if neither the bank nor the customer is directly associated with the target of the FHLBB's inquiry. Answering this query in the affirmative, we conduct an RFPA inquiry and conclude that no matter what ground the district court relied upon to quash the subpoena, the court erred.

The FHLBB's subpoena power extends to Sandsend's financial records; it is not limited to parties directly associated with the target of an investigation. Although this case presents a question of first impression, we are not without guidance. At the outset, we note two important principles that inform our inquiry: First, an administrative agency's power to issue subpoenas as it performs its investigatory function is a broad-ranging one which courts are reluctant to trammel. The agency

> has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may inform itself as to whether there is probable violation of the law.

*United States v. Morton Salt Co.*, 338 U.S. 632, 642, 70 S.Ct. 357, 363, 94 L.Ed. 401, 410 (1950); *see also, United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112, 119 (1964); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 216, 66 S.Ct. 494, 509, 90 L.Ed. 614

---

**3.** The RFPA permits the FHLBB to respond to a motion to quash *in camera*. 12 U.S.C. Section 3410(b). Upon filing its motion for reconsideration, the FHLBB also filed a motion requesting *in camera* review of the motion. Sandsend vigorously opposed *in camera* review. Curiously, the court never ruled on the FHLBB's motion for *in camera* review—it simply denied the motion to quash, without mentioning the motion for *in camera* review.

(1946). Second, when reviewing an administrative subpoena, the court plays a "strictly limited" role. *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C.Cir.), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed. 2d 1072 (1977). The court's inquiry is limited to two questions: (1) whether the investigation is for a proper statutory purpose and (2) whether the documents the agency seeks are relevant to the investigation. *See Powell*, 379 U.S. at 57–58, 85 S.Ct. at 254–255, 13 L.Ed.2d at 119; *United States v. Armada Petroleum Corp.*, 562 F.Supp. 43, 48 (S.D.Tex.1982) (citing *U.S. v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *United States v. Bell*, 564 F.2d 953, 959 (Em.App.1977)); *Sunshine Gas Co. v. United States Department of Energy*, 524 F.Supp. 834, 837 (N.D.Tex.1981) (citations omitted). Keeping these principles in mind, we turn to the FHLBB's statutory grant of authority.

Neither the language nor the legislative history of Section 1730 supports Sandsend's theory that the FHLBB may issue subpoenas only for the records of insured institutions and those directly associated with such institutions. Congress granted the FHLBB both the authority to investigate and the tools to exercise that authority. Sections 1730(m)(1) and (2). The FHLBB's investigative authority is broad, but not limitless; it extends to two types of institutions only, insured banks and their affiliates. Section 1730(m)(1). The FHLBB's investigatory tools, however, are not so limited.

The FHLBB may take testimony and issue subpoenas "as to any matter in respect of the affairs or ownership" of insured institutions and their affiliates. Section 1730(m)(2). The statute allows, without limitation, subpoenas relating to any matter regarding the affairs of the insured institution. It does not restrict the class of persons or institutions subject to a subpoena. Indeed, the statutory grant of authority contemplates a broad-sweeping power to issue subpoenas to *any* person, so long as he has information "as to any matter in respect of the affairs or ownership" of the institution or affiliate. The language of Section 1730 simply does not support Sandsend's theory that the FHLBB may subpoena a bank customer's financial records only if the customer is directly associated with the target of the FHLBB's investigation.[4]

Moreover, the legislative history of Section 1730 does not support Sandsend's theory. Congress patterned Section 1730 on the investigative authority vested in national bank examiners and FDIC examiners. S.Rep. No. 1482, 89th Cong.2d Sess. (1966), *reprinted* in 1966 U.S.Code Cong. and Admin.News 3532, 3551. Asserting that national bank examiners and FDIC examiners may issue subpoenas only to officers, directors, employees and borrowers of insured institutions, Sandsend maintains that Congress intended a similar limitation for the FHLBB. Sandsend overlooks the statutory language with which Congress granted national bank and FDIC examiners the power to issue subpoenas.

The FDIC's authority to issue subpoenas lies in 12 U.S.C. Section 1820(c), which contains language identical to the language in Section 1730. Both provisions permit the agency to take testimony and to issue subpoenas "as to any matter in respect of the affairs or ownership of any" insured bank or affiliate. Section 1820(c), like Section 1730(m)(2), does not restrict the class of parties subject to its subpoena power. Both sections grant the agency broad-sweeping powers to subpoena any party and any document, so long as it relates to "any matter in respect to the affairs or ownership" of an insured bank.

Like an FHLBB or FDIC examiner, a national bank examiner may investigate all

4. In addition to its express provision of a far-reaching subpoena power, Section 1730(m)(2) contains an enforcement provision that contemplates an extensive power. To enforce a subpoena, the FHLBB may apply to the district court where the insured bank or affiliate is located or where "the witness resides or carries on business." Section 1730(m)(2). If Congress were granting a power that extended only to insured institutions and affiliates, it would not need to provide for enforcement in a location different than the insured institution or affiliate's location. Allowing an enforcement action in the district where the witness resides implies that the subpoena power extends beyond the insured institution and its affiliates.

of the affairs of the bank it is examining. 12 U.S.C. Section 481. The national bank examiner's tools for gathering information are, however, different from those of the FHLBB and the FDIC. National bank examiners may "administer oaths and ... examine any of the officers and agents" of a national bank. *Id.* Sandsend contends that national bank examiners may take testimony from or issue subpoenas to bank officers and agents only. Because Congress patterned Section 1730(m)(2) on Section 481, Sandsend reasons, both provisions place similar restrictions on the agency's subpoena power. Sandsend's reasoning is flawed in two respects.

First, Section 481 does not restrict a subpoena power. Section 481 limits only the class of people national bank examiners may *examine;* it does not, for example, limit the class of people from whom national bank examiners may request documents with a subpoena duces tecum. Furthermore, Section 481 grants national bank examiners no subpoena power that the statute could qualify. Thus, Section 481 contains no limitation that we could import into Section 1730(m)(2). Second, even if Section 481 had placed a limitation on national bank examiners' subpoena power, we could not read that limitation into Section 1730. Congress patterned Section 1730 on Sections 481 and 1820; it was aware of the limitations in Section 481 when it enacted Section 1730. Yet Congress used different language in Section 1730 than in Section 481. Very simply, Congress chose not to include Section 481's limitation in Section 1730. The difference between the language in Sections 481 and 1730 evinces a congressional decision not to impose Section 481's limitations on the FHLBB. Although Congress moulded Section 1730 in the shape of Sections 1820 and 481, it did not, by relying on Sections 1820 and 481, limit the FHLBB's subpoena power.

Both the FHLBB and Sandsend rely on two district court opinions to support their interpretations of Section 1730. Neither opinion advances our inquiry. In *FSLIC v. Bass Financial Services,* the district court commented that other courts have construed the FSLIC's subpoena powers broadly. 552 F.Supp. 352, 354 (N.D.Ill. 1982). With this broad construction in mind, the *Bass* court held that the FSLIC may subpoena books and records from "borrowers of, and other persons doing business with, insured institutions." *Id.* Seizing upon this language, Sandsend concludes that the *Bass* court limited the FHLBB's subpoena power to parties connected with the insured institution. The FHLBB, on the other hand, relies on the court's broad reading of the subpoena power to conclude that it extends to Sandsend's records. Each party is stretching the *Bass* court's opinion far beyond its intended reach. The *Bass* court did not decide or even comment upon the scope of the FHLBB's subpoena powers. Rather, the issue before the court was whether the FHLBB could issue a subpoena to an affiliate of a previously insured institution if the institution was not insured at the time the FHLBB issued the subpoena. *See id.* Nothing in the *Bass* court's analysis confines, delimits or determines the class of persons subject to the FHLBB's subpoena power.

Nor is the court's opinion in *FSLIC v. First National Development Corp.* of help. In *First National,* the court held that the FHLBB's subpoena power is not limited to officers and directors of insured institutions. 497 F.Supp. 724, 731 (S.D. Tex.1980). The power extends to borrowers and other persons doing business with insured institutions. *Id.* Notwithstanding the parties' contentions, the *First National* court neither confined the subpoena power to associates of the institution nor expanded the power to all persons possessing information relevant to the FHLBB's inquiry.

Finally, Sandsend portends grave consequences if we allow the FHLBB to issue a subpoena for Sandsend's financial records: If the FHLBB can issue a subpoena for Sandsend's records, we are told, it also can issue a subpoena for the records of all of Vision Banc's borrowers and the records of the creditors whom Vision Banc's borrowers paid with Vision Bank's funds—and all of those creditor's creditors who were paid with funds originating at Vision Banc. In

other words, Sandsend complains that the FHLBB would be able to trace loan proceeds to see how they are used.

We are not dismayed: this type of inquiry is proper for the FHLBB and is precisely what the FHLBB is attempting to do in this case. The FHLBB suspects that Sandsend was part of a scheme to defraud Vision Banc or to misuse Vision Bank's funds. The FHLBB is attempting to trace Vision Banc's loan and account for the use of the funds. We find nothing unusual or improper in this type of investigation.

■ The FHLBB's subpoena power extends to the records of persons who, like Sandsend, are not directly associated with the target of the FHLBB's inquiry. Thus, the only conceivable ground for quashing the subpoena must lie in the RFPA, the sole judicial remedy available to bank customers whose records are the subject of a subpoena. Section 3410(e). Nothing in the RFPA, however, permits us to affirm the district court. The court committed a plethora of procedural errors, despite which, however, we need not remand for reconsideration on the merits. For even accepting all of Sandsend's factual allegations as true, the district court could not properly quash the subpoena under the RFPA.

### III. THE DISTRICT COURT'S PROCEDURAL ERRORS

■ For the sake of brevity, we notice only two of the court's procedural errors, either of which would be dispositive. In ruling on Sandsend's motion to quash before the FHLBB's time to respond had expired, the court erred twice: it neglected to follow the RFPA's procedures for resolving a customer challenge and it denied the FHLBB an opportunity to respond. When resolving a challenge to a subpoena

under the RFPA, the court *"shall* order the Government authority to file a sworn response ..." Section 3410(b) (emphasis added). Section 3410(b) requires a government response to a motion to quash and places the onus of obtaining that response on the district court. With this provision, Congress made clear its intention that the court would rule on challenges only with the aid of the agency's response. Despite Section 3410(b)'s directive, the district court did not order the FHLBB to respond to Sandsend's motion to quash. Rather, the court ruled without the benefit of a responsive pleading from the FHLBB. Moreover, the court did not allow the FHLBB to respond, thus robbing it of its right to be heard. Sandsend filed its motion on July 8, asserting that the FHLBB had 20 days to respond. Although the FHLBB contends that it had 60 days to respond, the district court erred even if we accept the 20 day period. The district court ruled on the motion 18 days after receiving it, two (or 42) days before the FHLBB's time to respond expired. Even without Section 3410(b), the district court's action constituted error, for it denied the FHLBB an opportunity to be heard.[5] We may reverse the district court on these grounds alone.[6]

### IV. THE DISTRICT COURT'S SUBSTANTIVE ERRORS

Despite the abundance of procedural miscues, we need not remand for reconsideration under the proper procedure. When the "record permits only one resolution of" an issue presented for appeal, we need not waste precious resources remanding the case. Rather, we may resolve the issue ourselves. *Pullman–Standard v. Swint*, 456 U.S. 273, 292, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66, 82 (1982) (citing *Kelley v.*

5. Sandsend contends that the FHLBB had actual notice of the motion because it served the motion on the FHLBB. That may well be so, but actual notice of the motion was of no use if the FHLBB could not respond to it.

6. As Sandsend filed its motion to quash three days after the time for filing it had expired, the court, at least in theory, erred by granting the motion. Under the RFPA, the party challenging the subpoena must file his motion to quash

within ten days of the date of service or 14 days of the date of mailing the subpoena. Sandsend's time to respond expired on July 5; Sandsend filed its motion on July 8. Although the untimely nature of the motion would, in most cases, provide an independent ground for denying the motion, the FHLBB waived the issue by neglecting to raise the issue in its motion for reconsideration.

*Southern Pacific Co.*, 419 U.S. 318, 331–32, 95 S.Ct. 472, 479–80, 42 L.Ed.2d 498 (1974)); *Williams v. New Orleans Steamship Association*, 688 F.2d 412, 416 (5th Cir.1982), *cert. denied*, 460 U.S. 1038, 103 S.Ct. 1428, 75 L.Ed.2d 789 (1983) (quoting *Pullman–Standard v. Swint*, 456 U.S. 273, 292, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66, 82 (1982)). The RFPA provides only three grounds on which the district court may quash a subpoena: (1) the agency's inquiry is not a legitimate law enforcement inquiry or (2) the records requested are not relevant to the agency's inquiry or (3) the agency has not substantially complied with the RFPA. Accepting all of Sandsend's factual allegations as true, the record permits only one resolution of Sandsend's motion to quash—the motion should have been denied.[7]

 We find no basis in the record for quashing the subpoena. First, it is undisputed that the FHLBB's examination of Vision Banc is a legitimate law enforcement inquiry. Second, Sandsend's records are relevant to the FHLBB's inquiry. For purposes of an administrative subpoena, the notion of relevancy is a broad one. *Equal Employment Opportunity Commission v. Elrod*, 674 F.2d 601, 613 (7th Cir.1982). An agency "can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt*, 338 U.S. at 642, 70 S.Ct. at 363, 94 L.Ed. at 410. So long as the material requested " 'touches a matter under investigation,' " an administrative subpoena will survive a challenge that the material is not relevant. *Elrod*, 674 F.2d at 613 (quoting *Motorola v. McLain*, 484 F.2d 1339, 1345 (7th Cir.1973), *cert. denied*, 416 U.S. 936,

94 S.Ct. 1935, 40 L.Ed.2d 287 (1974)). Certainly, Sandsend has only a tangential relationship to Vision Banc, the target of the FHLBB's investigation. But the FHLBB suspects that Sandsend is part of a scheme to defraud Vision Banc or to misuse Vision Banc's funds. To investigate this suspicion, the FHLBB is tracing Vision Banc's loan proceeds through several transactions, including the transactions by which the funds ended up in Sandsend's West Belt account. Sandsend may have only a loose connection with Vision Banc. Its financial records, however, touch on a matter under investigation and, thus, are relevant to the FHLBB's examination.

Third, the FHLBB substantially complied with the RFPA. Although Sandsend does not expressly challenge the FHLBB's compliance with the RFPA, it does complain about the manner of service of the subpoena. On the assumption that Sandsend is a partnership, the FHLBB served the subpoena on two "principals" of Sandsend. Sandsend complains that it is a Jersey Channel Island corporation and that service on the individuals is improper. Nevertheless, the FHLBB's manner of service provided Sandsend actual notice of the subpoena. As Sandsend knew of the subpoena in time to challenge it, the FHLBB's manner of service, even if technically defective, constitutes substantial compliance. Finding no ground upon which to rest an affirmance of the district court, we REVERSE and direct the district court to ENFORCE the subpoena.

7. Sandsend urges us to remand on the ground that the district court reviewed the FHLBB's motion for reconsideration *in camera*. Sandsend maintains that it could not respond to the FHLBB's factual allegations in support of the subpoena until the FHLBB filed the motion for reconsideration as part of the record on appeal. Sandsend therefore requests that we remand the case so that it can adequately respond to the FHLBB's factual allegations. We reiterate, however, that a remand is unnecessary and would be a waste of time.

As the district court never ruled on the motion for *in camera* review, we have no way of knowing whether the court did, indeed, review the motion *in camera*. We assume, however, that Sandsend has put its best foot forward on appeal, explaining the factual basis for its position. Indeed, Sandsend has offered a detailed factual account of the transactions that the FHLBB considers suspicious. Even accepting Sandsend's account as true, we must conclude, however, that the subpoena must stand.