# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 6, 2012

No. 12-20515
Summary Calendar

Lyle W. Cayce
Clerk

TEXAS KEYSTONE, INCORPORATED,

Plaintiff-Appellant,

v.

PRIME NATURAL RESOURCES, INCORPORATED; JAN VELDWIJK,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-MC-357

Before KING, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:

Before the court is the appeal of Plaintiff-Appellant Texas Keystone, Incorporated ("Texas Keystone") from the district court's grant of a motion to quash certain discovery subpoenas. Texas Keystone argues that the district court erred by granting the motion before Texas Keystone had an opportunity to respond in opposition and by not providing any reasons on the record for its decision. We VACATE and REMAND to the district court for further proceedings.

No. 12-20515

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from a related case currently pending in the High Court of Justice, Queen's Bench Division, Commercial Court of London, England, Claim No. 2010 Folio 1517 (the "UK Litigation"). This action came before the district court under 28 U.S.C. § 1782, which provides that interested parties to a foreign proceeding may apply to a United States district court to obtain discovery relevant to the foreign litigation from a non-party located in the United States. Factual contentions in the UK Litigation bear directly on the appeal of the discovery order before this Court; thus, the factual background for that case is warranted before addressing the litigation in the Southern District of Texas.

### A.    The UK Litigation

In the UK Litigation, Excalibur Ventures LLC ("Excalibur") has asserted several contractual and related claims against Texas Keystone, as well as several other defendants (collectively "Defendants"). Excalibur is not a party to the appeal before this Court. The UK Litigation arises, in part, from disputes over agreements related to the exploration, development, and operation of oil blocks in Kurdistan, Iraq, including: (1) Texas Keystone and Defendants' alleged failure to comply with a collaboration agreement between Excalibur and Texas Keystone; and (2) Texas Keystone and Defendants' failure to recognize Excalibur's alleged interests in certain production sharing contracts ("PSCs") between, *inter alia*, the Defendants and the Kurdistan Regional Government ("KRG").

On February 16, 2006, Texas Keystone and Excalibur entered into a collaboration agreement in which the parties agreed, *inter alia*, to act in consortium to present "Consortium Bids," or joint bids, to the KRG for "Concessions" relating to petroleum blocks in Kurdistan (the "Collaboration Agreement"). The Collaboration Agreement defines "Concessions" as a license,

production sharing agreement, buy back, or any other similar concession.  The Collaboration Agreement provides that, if Texas Keystone and Excalibur both were awarded a Concession, they would enter into a "Joint Operating Agreement" relating to the petroleum block.  Texas Keystone and Excalibur agreed that they would bear their share of the costs and expenses under the Joint Operating Agreement and the Collaboration Agreement.   The Collaboration Agreement also states that Excalibur and Texas Keystone "shall conduct operations in compliance with all relevant laws and regulations of all jurisdictions having jurisdiction over the Parties and/or the Transactions contemplated by this Agreement," including the United States and Iraq.  The Collaboration Agreement releases the parties from its obligations under the contract in the case of a "Force Majeure" event, which includes a situation where the award of the concession is precluded by "any laws, rules regulations or orders of national or other governmental agencies or bodies having jurisdiction in or in respect of Iraqi Kurdistan."

Following their execution of the Collaboration Agreement, Texas Keystone and Excalibur together attempted to obtain a Concession from the KRG to explore, develop, and operate an oil field known as the Shaikan Block in Kurdistan.  On August 6, 2007, the KRG passed the Oil and Gas Law of the Kurdistan Region, Law No (22) 2007 (the "Oil and Gas Law").  Because of Texas Keystone's view that Excalibur was unable to qualify to participate in oil exploration  or production ventures in Kurdistan under the new Oil and Gas Law, Excalibur was not a party to a concession with the KRG relating to the Shaikan Block or any other oil fields in Kurdistan.  On November 6, 2007, the KRG granted a PSC for the Shaikan Block to Texas Keystone and others, but not to Excalibur (the "Shaikan PSC").

On December 17, 2010, Excalibur brought suit against Texas Keystone and others in the UK Litigation, alleging that it had been excluded unjustly from

No. 12-20515

the Shaikan PSC and that it was entitled to an interest in the PSC, even if it was not a party to the PSC. Excalibur has asserted various contractual and tort claims, as well as other claims under English law. Texas Keystone has raised several defenses to Excalibur's claims, two of which are relevant to the instant appeal.

Texas Keystone's first relevant defense in the UK Litigation is that, under Article 24 of the Oil and Gas Law, Excalibur could not qualify to participate in oil exploration because, according to Texas Keystone, Excalibur: (1) was not a foreign petroleum company; (2) did not have the financing capability, technical knowledge, and technical ability to carry out petroleum operations and had not submitted reliable documents to prove the same; and (3) did not have a record of compliance with principles of good corporate citizenship. Excalibur disputes these assertions but claims that it is entitled to its interest in the PSC even if it could not be a party to the PSC. Accordingly, Texas Keystone seeks discovery that would illuminate these contentions.

Texas Keystone's second relevant defense in the UK Litigation is that Excalibur did not have the necessary financing to meet its obligations under the Collaboration Agreement for participation in the Shaikan PSC. While there is a dispute as to exactly what financing Excalibur claimed it had, most germane here is Excalibur's repeated assertion that Appellee Prime Natural Resources Incorporated ("Prime") was willing to provide the necessary funding. However, Excalibur also asserts that it was unable to secure financing definitively because of Texas Keystone's refusal to recognize Excalibur's rights to the Shaikan PSC. Thus, another one of the discovery issues from Texas Keystone's perspective is the veracity of Excalibur's claim that it had this offer of financing from Prime and the reasons why Excalibur was unable to secure it.

4

## B.    The Litigation in the Southern District of Texas

In an effort to obtain discovery to support its defenses in the UK Litigation, Texas Keystone filed an application in the Southern District of Texas on June 8, 2012, in which it sought authorization to subpoena documents and testimony from Prime, pursuant to 28 U.S.C. § 1782.  Section 1782 allows interested persons access to discovery orders for the purpose of obtaining evidence for use in foreign proceedings.  In support of its Section 1782 application, Texas Keystone filed a nineteen-page memorandum of law and exhibits indicating why the subpoenas were relevant to the UK Litigation.  Texas Keystone principally seeks discovery from Prime relating to Prime's financing negotiations and decision-making process with respect to Excalibur and the Shaikan PSC, as well as other oil fields.

The district court granted Texas Keystone's application to seek discovery on June 8, 2012, the same day Texas Keystone filed the application.  As a result, Texas Keystone was authorized to issue discovery subpoenas to Prime.  Prime accepted service of the subpoenas on June 21, 2012, and the subpoenas were returnable on July 10, 2012.  On July 9, 2012, Texas Keystone agreed to give Prime until July 13, 2012 to produce documents pursuant to the subpoenas and to postpone depositions until Texas Keystone had an opportunity to review the documents Prime produced.  Instead of producing the documents, however, Prime filed a Motion to Quash on July 11, 2012.  In the Motion to Quash, Prime argues that the requests contained in the subpoenas are invasive, unduly burdensome, and irrelevant.  The next day, on July 12, 2012, the district court issued a written order granting the Motion to Quash without providing Texas Keystone an opportunity to respond to the motion.  The clerk did not enter the order until July 16, 2012.  The full text of the district court's order states, "[t]he subpoenas by Texas Keystone to Prime Natural Resources, Inc., and Jan

No. 12-20515

Veldwijk[1] issued in claim 2010 Folio 1517 in the High Court of Justice in London, England, are quashed."

Texas Keystone timely filed its notice of appeal with this court on July 26, 2012. On August 2, 2012, we entered an order expediting the appeal due to the upcoming trial date of October 8, 2012 in the UK Litigation, with the first opening brief due September 21, 2012. Briefing was completed on August 21, 2012, and the record on appeal was filed on August 23, 2012. Texas Keystone seeks reversal of the district court's order and requests that we not remand, but rather decide the merits of the discovery dispute because of the impending trial date. Texas Keystone also has filed a Motion to Supplement the Record in order to assist us in reaching the merits.

## II. DISCUSSION

### A. Jurisdiction

The district court had subject matter jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. While a discovery order generally is not a final, appealable order under Section 1291, we have held that we "[have] jurisdiction over an otherwise unappealable order if the appellant demonstrates that the order (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Goodman v. Harris Cnty.*, 443 F.3d 464, 468 (5th Cir. 2006) (citation and internal quotation marks omitted); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 815-16 (5th Cir. 2004) (noting that "we have jurisdiction over the denial of a discovery order directed to a non-party to an underlying lawsuit pending in another circuit"). These elements are met here, where: 1) the controversy is the discovery dispute; 2) the matter involves procedural due process and discovery

---

[1] Jan Veldwijk is Prime's Chief Executive Officer.

issues, which are separate from the merits of the underlying contractual and tort claims; and 3) the district court's order is effectively unreviewable because there is no other recourse for reviewing the order, since the merits litigation is in a foreign jurisdiction. *Cf. Wiwa*, 443 F.3d at 816 (asserting jurisdiction over a discovery order, in part, because "[a]ny appeal of the Texas district court's denial lies only with this court"). Thus, jurisdiction is proper here.

## B.    The District Court's Grant of Prime's Motion to Quash Texas Keystone's Subpoenas

Texas Keystone argues that the district court abused its discretion by not allowing Texas Keystone an opportunity to respond to Prime's Motion to Quash prior to ruling on the motion and by not providing any reasons for the reversal of its order authorizing the subpoenas just one month earlier. Further, Texas Keystone asserts that Prime has failed to meet its burden of showing why the requested information in the subpoenas is irrelevant or burdensome to produce.

Prime argues that Texas Keystone had a meaningful opportunity to be heard because Texas Keystone's memorandum in support of its application for authorization of its subpoenas under 28 U.S.C. § 1782 more than adequately demonstrated Texas Keystone's reasons for seeking the subpoenas. Prime also argues that the district court did not abuse its discretion because Prime's Motion to Quash clearly shows that the documents and testimony that Texas Keystone seeks are irrelevant and that the requests are burdensome to Prime.

Before addressing our review of the district court's decision, an overview of 28 U.S.C. § 1782 is necessary in order to provide a context for the procedural posture of the case below and for Prime's arguments in opposition.

### 1.  28 U.S.C. § 1782

Section 1782 allows an interested party to a foreign proceeding to apply to a United States district court in order to obtain discovery related to the foreign proceeding where the source of the discovery is not a party to the foreign

proceeding and can be found within the jurisdiction of the district court.  It

provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . .  The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).  Thus, once an interested party makes the requisite showing

that it has met the statutory factors, the district court judge has the discretion

to grant the application seeking the authority to issue subpoenas.  *Intel Corp. v.*

*Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004) ("[Section] 1782(a)

authorizes, but does not require, a federal district court to provide judicial

assistance to foreign or international tribunals or to 'interested person[s]' in

proceedings abroad.").[2]  Several courts have observed that this discretion is

informed by the "twin aims of the statute," which are "to provide efficient means

of assistance to participants in international litigation in our federal courts and

---

[2] In addition to these statutory factors, "[t]he Supreme Court has suggested that district courts should consider [several discretionary factors]: (i) whether the person from whom discovery is sought is a participant in the foreign proceeding, since nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach and therefore their evidence may be unobtainable absent § 1782(a) aid, (ii) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance, (iii) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and (iv) whether the § 1782(a) request is unduly intrusive or burdensome." *Ecuadorian Pls. v. Chevron Corp.*, 619 F.3d 373, 376 n.3 (5th Cir. 2010) (citing *Intel*, 542 U.S. at 264-67) (internal quotation marks omitted).

to encourage foreign countries by example to provide similar means of assistance to our courts." *In re Ishihara Chem. Co.*, 251 F.3d 120, 124 (2d Cir. 2001), *abrogated on other grounds by Intel*, 542 U.S. 241 (citation and internal quotation marks omitted); *Intel*, 542 U.S. at 247 ("Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals.").

Additionally, several circuits have elaborated on the threshold standard that Section 1782 establishes. "[Section] 1782 does not establish a standard for discovery. Instead, it provides for a threshold determination of whether to allow foreign litigants to enjoy discovery in U.S. courts in accordance with federal rules. The manner in which discovery proceeds will be determined by normal discovery rules." *Govt. of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012). The Seventh Circuit has stated:

> The section 1782 screen . . . is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court. Once the court has determined that such abuses are unlikely, the ordinary tools of discovery management, including [Fed. R. Civ. P.] 26, come into play; and with objections based on the fact that discovery is being sought for use in a foreign court cleared away, section 1782 drops out.

*Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (internal quotation marks omitted).[3] In light of the foregoing, the Federal Rules of Civil Procedure governed the underlying discovery requests once the district court granted Texas Keystone's Section 1782 application.

*2. Motion to Quash*

---

[3] *See also Weber v. Finker*, 554 F.3d 1379, 1384 (11th Cir. 2009) ("Once discovery is authorized under § 1782, the federal rules, Fed. R. Civ. P. 26–36, contain the relevant practices and procedures for the taking of testimony and the production of documents.").

We review a district court's grant of a motion to quash for abuse of discretion and will affirm the district court's decision unless it is "arbitrary or clearly unreasonable." *Wiwa*, 392 F.3d at 817.  Under Rule 45 of the Federal Rules of Civil Procedure, "a court may quash or modify a subpoena if [the subpoena] (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden."[4] *Id.* at 817-18 (citing Fed. R. Civ. P. 45(c)(3)).  In its Motion to Quash, Prime's objections to Texas Keystone's subpoenas arise under the fourth factor, undue burden.

Texas Keystone relies on our decision in *Sandsend Financial Consultants v. Federal Home Loan Bank Board,* 878 F.2d 875 (5th Cir. 1989*),* to argue that the district court abused its discretion by granting the Motion to Quash before providing Texas Keystone an opportunity to respond to the motion.  Texas Keystone also cites *Wiwa v. Royal Dutch Petroleum Company*, 392 F.3d 812 (5th Cir. 2004), to argue that the district court abused its discretion by providing no reasons on the record for its grant of the Motion to Quash.  We address each argument in turn.

In *Sandsend*, the Federal Home Loan Bank Board ("FHLBB") issued a subpoena for bank records pursuant to its statutorily-authorized investigatory powers.  *Sandsend*, 878 F.2d at 878.  The account holder filed a motion to quash the subpoena and the district court granted the motion before the FHLBB's time to respond had expired.  *Id.* at 877.  The case had two alternative holdings.  First, we held that the district court committed reversible error by failing to comply with certain requirements of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401 *et seq.*, before granting the motion to quash.  Second,

---

[4] While Rule 45 has been amended since *Wiwa* was decided, the substance of this provision has remained the same.

No. 12-20515

we held that, even in the absence of the RFPA, the district court erred by not providing the FHLBB an opportunity to respond to the motion. Regarding the latter holding, this court stated:

> For the sake of brevity, we notice only two of the court's procedural errors, *either of which would be dispositive.* In ruling on Sandsend's motion to quash before the FHLBB's time to respond had expired, the court erred twice: it neglected to follow the RFPA's procedures for resolving a customer challenge and it denied the FHLBB an opportunity to respond . . . . *Even without Section 3410(b)* [the provision of the RFPA that the district court failed to comply with], the district court's action constituted error, for it denied the FHLBB an opportunity to be heard. *We may reverse the district court on these grounds alone.*

*Sandsend*, 878 F.2d at 881 (internal footnotes and citations omitted) (emphasis added). Thus, under *Sandsend*, the district court here abused its discretion when it failed to provide Texas Keystone an opportunity to respond to Prime's Motion to Quash.

Moreover, in *Wiwa*, the district court granted a motion to quash and denied a motion to compel directed at a non-party to the underlying litigation, and it provided no reasons, written or oral, for its decision. *Wiwa*, 392 F.3d at 815. This court stated:

> In circumstances analogous to this situation–appellate review of a denial of a motion for abuse of discretion–we and other courts have held that a district court's denial of such a motion, unaccompanied by reasons–either written or oral–may constitute an abuse of discretion. Here, the district court quashed the subpoena and denied the motion to compel outright without providing oral or written reasons for doing so. Neither did the district court attempt to explain any deficiencies in either the subpoena or the motion so that [the non-moving party] might have an opportunity to cure any defects. Nor did the district court attempt to modify the

11

> subpoena to cure any overbreadth; the district court even failed to set or hold a hearing on the breadth of the subpoena. There is no record evidence that the district court considered and applied the factors . . . [for] determin[ing] whether the subpoena is overbroad. We hold that this constitutes an abuse of discretion under the circumstances present here.

*Id.* at 818-19 (acknowledging that "[g]enerally, modification of a subpoena is preferable to quashing it outright"). We held that the district court abused its discretion by quashing the subpoena and granting the motion to compel outright without giving any reasons for its decision. *Id.* at 819. Therefore, based on *Wiwa*, the district court here also abused its discretion by providing no reasons for its decision granting the Motion to Quash.

Prime attempts to distinguish *Sandsend* and *Wiwa* by arguing that: 1) neither case involved a Section 1782 application; and 2) unlike the parties in *Sandsend* and *Wiwa*, Texas Keystone had a meaningful opportunity to be heard in its nineteen-page Section 1782 application and accompanying exhibits.[5] However, Prime's arguments are unavailing for several reasons.

First, as the foregoing discussion of Section 1782 demonstrates, the normal federal discovery rules applied once Texas Keystone made the requisite showing in its Section 1782 application. *See, e.g.*, *Heraeus Kulzer*, 633 F.3d at 597 (noting that "with objections based on the fact that discovery is being sought for use in a foreign court cleared away, section 1782 drops out"). Therefore, the fact that a case involves a discovery request pursuant to this authority is not a distinguishing factor for assessing the request on the merits. Second, Texas Keystone submitted its application in order to meet the threshold standard

---

[5] Prime also argues that *Sandsend* is distinguishable because it held that the district court abused its discretion when it violated the RFPA. However, as we have observed already, *Sandsend* pronounced alternative holdings, one premised on the failure to comply with RFPA and one based on a violation of procedural due process.

under Section 1782, not in defense of a motion to quash, which requires a different analysis under the Federal Rules of Civil Procedure. Texas Keystone did submit a Section 1782 application supported with material related to the principal issues involved in the case, but it was not defending against a specific motion to quash or other objection at the time. Third, it is no answer to say that Texas Keystone had an opportunity to respond due to its Section 1782 application since we do not know whether the district court relied on this filing when granting the Motion to Quash. Indeed, there is no record evidence that the district court analyzed the factors for assessing whether Texas Keystone's discovery requests were in fact unduly burdensome to Prime. Nor did the district court endeavor to modify the subpoenas. Accordingly, on the authority of *Sandsend* and *Wiwa*, we hold that the district court abused its discretion by failing to provide Texas Keystone an opportunity to respond to the Motion to Quash and by providing no reasons for its decision.

We do not reach the question of how this court should modify the subpoena or otherwise address the merits of the Motion to Quash. Instead, we remand to the district court to adjudicate these issues in the first instance.[6]

### III.  CONCLUSION

For the foregoing reasons, we VACATE the district court's order and REMAND with instructions to allow Texas Keystone a reasonable period to respond to the Motion to Quash and, thereafter, to provide written or oral reasons for the basis of its ruling. Otherwise, the district court is fully empowered to exercise its discretion under the Federal Rules of Civil Procedure to resolve these discovery disputes in a manner not inconsistent with this opinion. Any appeal from the district court's decision on remand will be to this panel and will be expedited.

---

[6] Accordingly, we also do not address Texas Keystone's Motion to Supplement the Record.