# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20668

United States Court of Appeals
Fifth Circuit

**FILED**

June 2, 2015

Lyle W. Cayce
Clerk

BRAVO EXPRESS CORPORATION,

Petitioner – Appellant,

v.

TOTAL PETROCHEMICALS & REFINING USA, INCORPORATED;
ATLANTIC TRADING & MARKETING, INCORPORATED,

Respondents – Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-MC-1843

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

PER CURIAM:*

Appellant Bravo Express Corporation applied to the Southern District of Texas for judicial assistance in obtaining discovery for use in a foreign tribunal, pursuant to 28 U.S.C. § 1782(a). The district court denied Appellant's request without any oral or written explanation. Because our precedent requires a district court to provide an explanation when it denies a § 1782(a) application,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20668

we VACATE and REMAND to the district court with instructions to provide oral or written reasons for its decision.

## I.

Bravo applied to the Southern District of Texas for judicial assistance pursuant to 28 U.S.C. § 1782(a),[1] seeking discovery of evidence from Appellees Total Petrochemicals & Refining USA, Inc. and Atlantic Trading & Marketing, Inc. Bravo sought (and continues to seek) this evidence for use in judicial proceedings before the High Court in London, United Kingdom,[2] against non-party Chartering and Shipping Services, S.A. (CSSA).[3] The discovery Bravo seeks "relates to the origin of a material leak of crude oil and its ensuing environmental damage to the waters of the Bay of Luanda, Republic of Angola," for which Bravo claims it was "falsely blamed and wrongly held responsible by the Angolan authorities."[4] According to Bravo, Appellees "have

---

[1] In relevant part, § 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.

[2] At the time Bravo filed its § 1782(a) petition, the proceedings in the U.K. Court had not yet commenced. The foreign proceedings have since commenced and currently are in progress.

[3] Appellees are not parties to the U.K. proceedings.

[4] Although not particularly relevant to the proceedings before this court, the facts of the underlying dispute, as alleged by Bravo in its § 1782(a) application, are as follows:

No. 14-20668

the practical ability to obtain the information sought in discovery" because they have "common ownership, corporate relationship, and joint and coordinated business operations with the entities that were directly involved in the underlying acts." In addition, "Mr. Phillipe Groult, the executive who was in charge of the [Angolan] refinery . . . that is at the heart of the proceedings

---

Bravo owns the tanker the New Challenge (the "New Challenge"). Bravo chartered the New Challenge to CSSA, which subsequently sub-chartered the New Challenge to its affiliated entity, Fina de Petroleos de Angola, S.A.R.L. ("FPA"). At all material times herein, CSSA and FPA were wholly-owned subsidiaries of the French oil company, Total, S.A. ("Total"). . . .

In mid-2007, . . . the Angolan Government, partly on information supplied by Total, FPA, and CSSA, falsely accused the New Challenge of causing a massive oil spill and consequent pollution in the port of Luanda. As a result, the Angolan Government wrongfully detained the New Challenge and its crew, and demanded, among other things, a $2 million cash payment from Bravo for their release.

Bravo has since established through satellite images, documents obtained through separate litigation, and other sources that the oil spill and ensuing pollution were in fact caused by leakage from an FPA submarine pipeline linking an off-shore pontoon to FPA's refinery ashore. In fact, Bravo has secured through separate litigation documentary evidence establishing that in January 2007 (during the time that crude oil was sighted in the Luanda Bay) FPA hired a diving and underwater repair company to inspect and repair a leak in the FPA terminal's floating pontoon. That diving team was also observed at work by the New Challenge's crew.

Although they had full knowledge of the leakage, as evidenced by the fact that FPA hired a third-party entity to detect and repair the leak, FPA and CSSA failed to advise Bravo (or the New Challenge's crew) of the leakage and continued to employ the New Challenge.

Under the Time Charter Party and UK law, CSSA is liable to Bravo for all losses related to the wrongful detention of the New Challenge and [its] crew, and for the imposition and payment of the $2 million fine and related expenses. Bravo has demanded payment of its losses from CSSA and its parent, Total, both of whom have refused to make Bravo whole and have further refused to acknowledge the source of the leak.

(footnotes omitted).

3

No. 14-20668

abroad and which was then owned by an affiliate of the Appellees, is now employed by or provides services to the Appellees."

Appellees opposed Bravo's application, and the district court held a hearing. The district court did not rule on the motion during the hearing. Four days after the hearing, the district court issued an order stating, without explanation: "IT IS HEREBY ORDERED that Plaintiff's Application for Discovery Assistance . . . is **DENIED**." Bravo timely appealed.

## II.

The parties agree that review of a decision under § 1782(a) proceeds in two steps. First, we "review de novo whether the statutory prerequisites for granting § 1782(a) relief are satisfied." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 376 (5th Cir. 2010). Second, we determine whether the district court abused its discretion in weighing the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). The bounds of the district court's discretion are "informed by the 'twin aims of the statute,' which are 'to provide efficient means of assistance [in our federal courts] to participants in international litigation . . . and to encourage foreign countries by example to provide similar means of assistance to our courts.'" *Tex. Keystone, Inc. v. Prime Natural Res., Inc.*, 694 F.3d 548, 553–54 (5th Cir. 2012) (quoting *In re Ishihara Chem. Co.*, 251 F.3d 120, 124 (2d Cir. 2001), *abrogated on other grounds by Intel*, 542 U.S. 241).

## III.

### A.

Three statutory requirements must be satisfied before a district court may grant assistance under § 1782(a): (1) the person from whom discovery is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or "'any

4

interested person.'"  *Tex. Keystone*, 694 F.3d at 553 (quoting 28 U.S.C. § 1782(a)).  Appellees contend that Bravo failed to satisfy the first and second statutory requirements.

Appellees' argument with respect to the first requirement is frivolous. They argue that the first statutory requirement is not satisfied because "[t]he companies from whom discovery is sought do not reside and cannot be found in [the Southern District]."  Appellees do not claim that *they* reside outside of the Southern District; rather, they argue that CSSA—the entity Bravo seeks to hold liable in the U.K. courts—does not reside in the Southern District.  That is not the inquiry.  Rather, the inquiry is whether the parties from whom discovery is sought in the § 1782(a) motion (*i.e.*, Appellees) reside in the Southern District.  *See Tex. Keystone*, 694 F.3d at 553 ("Section 1782 allows an interested party . . . to obtain discovery related to the foreign proceeding where *the source of the discovery* . . . can be found within the jurisdiction of the district court." (emphasis added)); *see also Intel*, 542 U.S. at 264 (noting that § 1782(a) "ordinarily" is invoked "when evidence is sought from a nonparticipant in the matter arising abroad").  Appellees do not dispute that they are "found" in the Southern District of Texas, so the first statutory requirement is satisfied.  *See* 28 U.S.C. § 1782(a).

Appellees' argument with respect to the second requirement fares no better.  Appellees claim that Bravo did not establish that that the discovery they seek is "for use in a proceeding in a foreign or international tribunal."  Although a previous version of § 1782(a) required that the discovery be for use in a "pending" proceeding, Congress amended the statute to delete the word "pending."  *See Intel*, 542 U.S. at 258.  Accordingly, the statute only requires the foreign proceeding to be in "reasonable contemplation."  *Id.* at 259.  The Eleventh Circuit has described the "reasonable contemplation" requirement as follows: "The future proceedings must be more than speculative . . . and a

district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014) (internal quotation marks omitted).

According to Appellees, Bravo failed to show that the U.K. litigation was within reasonable contemplation at the time Bravo filed its § 1782(a) application. Appellees' main argument is that the underlying events took place in 2007 and that, in light of the "seven-year delay" between the underlying events and the § 1782(a) application, the "hypothetical litigation was neither imminent nor within reasonable contemplation." We disagree. As an initial matter, Appellees' cited authority does not support the proposition that a lengthy gap between the underlying events and the foreign suit precludes judicial assistance under § 1782(a). In the first case Appellees cite, the court quashed a § 1782(a) subpoena as a discretionary matter, not for failure to satisfy the statutory requirements of § 1782(a). *See In re Nascimento*, No. 14 Misc. 0020, 2014 WL 4457141, at *1 (S.D.N.Y. May 13, 2014), *aff'd sub nom. Nascimento v. Faria*, No. 14-2150, 2015 WL 1934331 (2d Cir. Apr. 30, 2015). The second case Appellees cite makes no mention of an unwarranted delay in filing the foreign lawsuit. *See In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 Civ. 1801 (NRB), 2014 WL 3404955 (S.D.N.Y. July 9, 2014).

In any event, any concerns about a lengthy delay are mitigated in this case. Bravo filed, with its § 1782(a) application, a sworn affidavit from Douglas Burnett, a partner at the law firm representing Bravo. Burnett avers that an action against CSSA will "be imminently filed with the High Courts in London, United Kingdom," and he proceeds to lay out, in great detail, the facts that give

rise to the prospective lawsuit.[5] Moreover, at the motion hearing in the district court, Bravo's counsel made several representations germane to the question of whether a lawsuit was within reasonable contemplation. He attested that Bravo had already prepared its "claim of particulars" against CSSA and was "intending of filing [*sic*] it in October of this year before the UK courts, the commercial division, the High Court of London."[6] He explained that much of the seven-year "delay" was spent gathering evidence, as Bravo was "informed by [its] barristers in the UK that when we file our action in the UK we have to file it with all the evidence attached." And he stated that Bravo had requested and received extensions of time to file from the prospective defendant in the foreign case. In light of these filings and representations, we conclude that Bravo has satisfied the second statutory requirement.

## B.

We now turn to the discretionary portion of the § 1782(a) inquiry. In *Intel*, the Supreme Court advised that courts considering § 1782(a) applications should consider: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach" and therefore their evidence may be "unobtainable absent § 1782(a) aid"; (2) "the nature of the foreign tribunal, the character of the proceedings

---

[5] Appellees argue that Burnett's affidavit is defective because it is "self-serving," "conclusory," "contains many unsubstantiated hearsay statements that do not constitute evidence," and "is based only on 'information and belief.'" This argument is unpersuasive because the relevant portion of the affidavit—where Burnett attests that the foreign lawsuit is to be imminently filed—appears to be based on personal knowledge, not "on information and belief." The affidavit's statement that the information therein is based on "information and belief" appears after the statement regarding the imminent litigation and, in any event, refers only to the underlying events in Angola, much of which is supported by documentary evidence anyway.

[6] The pleading was filed in November 2014.

underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the § 1782(a) request is "unduly intrusive or burdensome." 542 U.S. at 264–65.

The district court mentioned these factors during the motion hearing, but the district court's order does not contain any explanation of why it denied the application. Although Rule 52(a)(3) of the Federal Rules of Civil Procedure provides that a "court is not required to state findings or conclusions when ruling on a motion," our precedent requires district courts to provide reasoning when they decline to issue a subpoena or when they quash a subpoena. In *Texas Keystone*, for example, the party from whom discovery was sought under § 1782(a) filed a motion to quash the discovery subpoenas. The district court granted the motion to quash, but we vacated the order, holding that "the district court . . . abused its discretion by providing no reasons for its decision granting the Motion to Quash." 694 F.3d at 555. Similarly, in *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812 (5th Cir. 2004),[7] we held that the district court abused its discretion because it: (1) "quashed the subpoena and denied the motion to compel outright without providing oral or written reasons for doing so," *id.* at 818–19; (2) never "attempt[ed] to explain any deficiencies in either the subpoena or the motion so that [appellant] might have an opportunity to cure any defects," *id.* at 819; and (3) did not "attempt to modify the subpoena to cure any overbreadth," *id.*

---

[7] *Wiwa* did not directly implicate § 1782(a) because it involved a motion to quash a subpoena that had been issued to obtain discovery from a non-party to a civil action filed in the Southern District of New York (*i.e.*, the proceeding was domestic, not foreign). Nonetheless, we relied on *Wiwa* in *Texas Keystone* for the proposition that a district court must provide reasoning for its decision to quash a subpoena.

No. 14-20668

As in *Texas Keystone* and *Wiwa*, the district court in this case abused its discretion by failing to explain the grounds on which it denied Bravo's application.  Appellees urge that affirmance nonetheless is proper because "[t]he record of the hearing reflects the reasons for the district court's exercise of its discretion in the denial of Bravo's request."  We disagree, both legally and factually.  As a legal matter, "[a]n explanation must be generated by the court, not inferred by the appellate court from the submissions of the parties" or from the district court's questions and remarks.  *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015); *see also id.* at 291 ("Whether the court's questions indicated that it understood the law and the briefings is immaterial.").

As a factual matter, the record does not support Appellees' claim that the district court decided three of the four discretionary factors in favor of Appellees.  Indeed, the hazards of relying on a motion hearing transcript are brought into sharp focus by this case.  In support of their argument that the district court ruled in their favor on the second discretionary factor, Appellees cite only *questions* the district court asked to Bravo's counsel about that factor.  We do not interpret these questions as anything more than they are: questions.  Appellees stretch even further with respect to the third discretionary factor—they cite *silence*.  According to Appellees, we can infer the district court's position on the third discretionary factor because, when Appellees' counsel argued that Bravo was "trying to do an end-run around the English court system," the district court did not "challenge" the assertion.  We do not interpret the district court's silence as anything more than it is: silence.

Turning to the fourth discretionary factor, the transcript does contain some suggestion that the district court believed that Bravo's discovery request was overbroad.  However, even if we were to ascribe legal relevance to the district court's questions and remarks at the hearing (which we do not), the

9

district court still would have abused its discretion by failing to explain why it denied the motion outright rather than narrowing—or requiring Bravo to narrow—the discovery request. As we explained in *Wiwa*, "modification of a subpoena is preferable to quashing it outright," and a district court abuses its discretion when it does not explain its reasoning, does not allow the applicant an opportunity to cure any defects, and does not "attempt to modify the subpoena to cure any overbreadth." 392 F.3d at 818–19; *see also Tex. Keystone*, 694 F.3d at 556 (faulting district court for failing to "endeavor to modify the subpoenas"). This is particularly true where, as here, counsel for the applicant offers to narrow the discovery request to remedy any overbreadth. Accordingly, we conclude that the district court abused its discretion.

## IV.

For the foregoing reasons, we VACATE the district court's order and REMAND to the district court with instructions to provide oral or written reasons for its decision, should it deny the application. To the extent the district court's decision is based on the burdensomeness of Bravo's application, the district court is directed to consider whether Bravo's discovery request could be modified to be less burdensome. The district court remains fully empowered to exercise its discretion under the Federal Rules of Civil Procedure to resolve this dispute in any manner not inconsistent with this opinion. Any appeal from the district court's decision on remand will be to this panel and will be expedited. *See Tex. Keystone,* 694 F.3d at 556.